**WO**                                                                                            RP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy P. Olmos, et al., | ) No. CV 10-2564-PHX-GMS (MEA) |
| Plaintiffs, | ) **ORDER** |
| vs. | ) |
| David Stokes, II, et al., | ) |
| Defendants. | ) |

Pending before the Court are Plaintiff's "Motion For Enlargement Of Time To File First Amended Complaint" (Doc. 19), "Motion For Order To Return Of Documents Not Filed By Clerk" (Doc. 20), First Amended Complaint (Doc. 21), "Affidavit In Support Of Complaint (Vol. II, §§ 47-85)" (Doc. 22), "Motion For Leave To Suspend Enforcement Of Local Rules Upon Pro Se Litigant" (Doc. 23), "Memorandum In Support Of Motion For Leave To Suspend Enforcement Of Local Rules Upon Pro Se Litigant" (Doc. 24), and "Motion For Assistance In Locating Select Defendants For Service Of Pleadings" (Doc. 25).

**I.     Procedural Background**

On November 28, 2010, Plaintiff Timothy P. Olmos, who is confined in the Arizona State Prison Complex-Florence (ASPC-Florence), filed "Plaintiffs' Motion For Leave To File Lengthy Complaint And Related Pleadings" (Doc. 1).  In conjunction with his Motion, Plaintiff Olmos submitted the following documents which were lodged in this case by the

TERMPSREF

1
2
3
4
5
6
7
8

Clerk of Court: a *pro se* "Civil Rights Complaint By A Prisoner" (Doc. 2), which included a "Complaint Addendum" (Docs. 2 [part] and 3); a "Notice Of Appearance As Lead Plaintiff" (Doc. 4); an "Application to Proceed *In Forma Pauperis* By A Prisoner Civil (Non-Habeas)" (Doc. 5); a certified "Inmate Bank Account" statement (Doc. 6); an "Affidavit In Support Of Complaint" (Doc. 7); a "Memorandum Establishing Conformance With 42 U.S.C. § 1997e(a)" (Doc. 8), which included "Appendices To Memorandum Establishing Conformance With 42 U.S.C. § 1997e(a)"; and an "Ex Parte Motion To Modify Requirements For Service Of Process" (Doc. 10).

9
10
11
12
13
14
15
16
17
18
19

By Order filed February 9, 2011 (Doc. 11), the Court granted "Plaintiffs' Motion For Leave To File Lengthy Complaint And Related Pleadings" (Doc. 1) in part, to the extent that the Court directed the Clerk of Court to file Plaintiff's lodged "Civil Rights Complaint By A Prisoner" (Doc. 2); "Notice Of Appearance As Lead Plaintiff" (Doc. 4); "Application to Proceed *In Forma Pauperis* By A Prisoner Civil (Non-Habeas)" (Doc. 5); certified "Inmate Bank Account" statement (Doc. 6); "Affidavit In Support Of Complaint" (Doc. 7); and "Ex Parte Motion To Modify Requirements For Service Of Process" (Doc. 10). "Plaintiffs' Motion For Leave To File Lengthy Complaint And Related Pleadings" (Doc. 1) was denied in part, to the extent that the Court directed the Clerk of Court not to file Plaintiffs' lodged 556-page "Complaint Addendum" (Docs. 2 [part] and 3) and "Memorandum Establishing Conformance With 42 U.S.C. § 1997e(a)" (Doc. 8).

20
21
22
23
24
25
26
27
28

The Court's Order also directed that this action may not proceed as a class action, denied as moot the "Notice Of Appearance As Lead Plaintiff" and "Ex Parte Motion To Modify Requirements For Service Of Process," granted the "Application to Proceed *In Forma Pauperis* By A Prisoner Civil (Non-Habeas)," assessed an initial partial filing fee, dismissed the "Civil Rights Complaint By A Prisoner" for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, and gave Plaintiff Olmos 30 days from the filing date of the Order to file a first amended complaint in compliance with the Order.  Lastly, the Order dismissed Plaintiffs David Stokes, II; James Walker; Jose Ulloa; Roger Clark; William McEnany; and "all others similarly situated" from this action.

1    **II.    Motion for Enlargement of Time to File First Amended Complaint**

2          On February 22, 2011, Plaintiff filed a "Motion For Enlargement Of Time To File

3    First Amended Complaint" (Doc. 19), in which Plaintiff seeks a 30-day enlargement of time

4    to file his First Amended Complaint.  Plaintiff's Motion will be granted and Plaintiff's First

5    Amended Complaint (Doc. 21), which was filed on March 14, 2011, will be accepted as

6    being timely filed.

7    **III.    Motion for Order to Suspend Enforcement of Local Rules**

8          On March 21, 2011, Plaintiff filed a "Motion For Leave To Suspend Enforcement Of

9    Local Rules Upon Pro Se Litigant" (Doc. 23) and "Memorandum In Support Of Motion For

10   Leave To Suspend Enforcement Of Local Rules Upon Pro Se Litigant" (Doc. 24).  In his

11   Motion, Plaintiff requests that the Court accept his First Amended Complaint (Doc. 21) with

12   "a slight modification to the original forms provided by the Clerk."  Plaintiff's Motion will

13   be granted to the extent that Court will accept Plaintiff's First Amended Complaint in the

14   form that it was filed.

15   **IV.    Statutory Screening of Prisoner Complaints**

16         The Court is required to screen complaints brought by prisoners seeking relief against

17   a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

18   § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

19   claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

20   be granted, or that seek monetary relief from a defendant who is immune from such relief.

21   28 U.S.C. § 1915A(b)(1), (2).

22         A pleading must contain a "short and plain statement of the claim *showing* that the

23   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not

24   demand detailed factual allegations, "it demands more than an unadorned, the-defendant-

25   unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

26   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

27   statements, do not suffice." Id.

28         "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

1   claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly,

2   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

3   that allows the court to draw the reasonable inference that the defendant is liable for the

4   misconduct alleged." Id.  "Determining whether a complaint states a plausible claim for

5   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

6   experience and common sense." Id. at 1950.  Thus, although a plaintiff's specific factual

7   allegations may be consistent with a constitutional claim, a court must assess whether there

8   are other "more likely explanations" for a defendant's conduct. Id. at 1951.

9        But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

10  must "continue to construe pro se filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th

11  Cir. 2010).  A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards

12  than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89,

13  94 (2007) (per curiam)).

14  **V.    First Amended Complaint**

15       Plaintiff should take notice that all causes of action alleged in an original complaint

16  which are not alleged in an amended complaint are waived. Hal Roach Studios v. Richard

17  Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990) ("an amended pleading supersedes the

18  original"); King v. Atiyeh, 814 F.2d 565 (9th Cir. 1987).  Accordingly, the Court will

19  consider only those claims specifically asserted in Plaintiff's First Amended Complaint

20  (Doc. 21) with respect to only those Defendants specifically named in the First Amended

21  Complaint.

22       Named as Defendants in the First Amended Complaint are: (1) Charles L. Ryan,

23  Director of the Arizona Department of Corrections (ADC); (2) GEO Group, Inc. (GEO),

24  Private Prison Contractor – Operator at the Central Arizona Correctional Facility (CACF);

25  (3) Compass Group – North America Division, d.b.a. Canteen Correctional Services

26  (Canteen), Food Services Contractor at all ADC-run prison units; (4) Keefe Group, d.b.a.

27  Keefe Commissary Network (Keefe), Inmate Store Contractor at every prison unit housing

28  ADC inmates; (5) Janice K. Brewer, Governor of Arizona; (6) Ferris D. Ahee, Dentist at the

1   Winchester Unit of the Arizona State Prison Complex-Tucson (ASPC-Tucson); (7) Daniel

2   Cardoza, Lieutenant at the North Unit of ASPC-Florence; (8) "Unknown ADC Security

3   Officer(s)" at the Mail Room of the Arizona State Prison Complex-Lewis (ASPC-Lewis)

4   and/or the Morey Unit of ASPC-Lewis; (9) "Unknown ADC Administrator(s)"; (10) Eric

5   Hall, Correctional Officer (CO) IV at the Winchester Unit of ASPC-Tucson; (11) Thomas

6   C. Horne, Arizona Attorney General; (12) Allen Ortega, CO II/SSU Officer at ASPC-

7   Florence Complex Administration; and (13) Timothy Brockman, Captain at ASPC-Florence

8   Complex Administration.

9          Plaintiff alleges 15 counts in the First Amended Complaint and seeks a jury trial,

10  declaratory and injunctive relief, appointment of a special master, all fees and costs, and

11  compensatory and punitive monetary damages, with compound interest.

12  **VI.    Discussion**

13         **A.    Count I**

14         In Count I, Plaintiff claims that his Eighth and Fourteenth Amendment rights were

15  violated by Defendant GEO's practice of operating "CACF with constantly-illuminated

16  dorms, including the dorm that Plaintiff was housed in."  In support of his claim, Plaintiff

17  contends that "constantly-illuminated dorms impose physical and psychological harm with

18  no legitimate penological justification." Plaintiff alleges that the actions of **Defendant GEO**

19  "posed an unreasonable risk of serious damage to Plaintiff Olmos' future health."

20         "'An Eighth Amendment claim that a prison official has deprived inmates of humane

21  conditions must meet two requirements, one objective and one subjective.'  'Under the

22  objective requirement, the prison official's acts or omissions must deprive an inmate of the

23  minimal civilized measure of life's necessities.'"  Lopez v. Smith, 203 F.3d 1122, 1132-33

24  (9th Cir. 2000) (internal citations and citations omitted).  The subjective prong requires the

25  inmate to demonstrate that the deprivation was a product of "deliberate indifference" by

26  prison personnel. Wilson v. Seiter, 501 U.S. 294, 302-03 (1991). Such indifference can only

27  occur if "the official knows of and disregards an excessive risk to inmate health or safety; the

28  official must both be aware of facts from which the inference could be drawn that a

1   substantial risk of serious harm exits, and he must also draw the inference." <u>Farmer v.</u>

2   <u>Brennan</u>, 511 U.S. 825, 837 (1994).

3   Although *pro se* pleadings are liberally construed, <u>Haines v. Kerner</u>, 404 U.S. 519,

4   520-21 (1972), conclusory and vague allegations will not support a cause of action. <u>Ivey v.</u>

5   <u>Board of Regents of the University of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982). Further,

6   a liberal interpretation of a civil rights complaint may not supply essential elements of the

7   claim that were not initially pled. <u>Id</u>. "Threadbare recitals of the elements of a cause of

8   action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949.

9   Plaintiff's allegations in Count I are too conclusory and vague to state a claim for

10   relief under the Eighth and Fourteenth Amendments. While subjecting an inmate to constant

11   illumination may, under certain circumstances, rise to the level of an Eighth Amendment

12   violation, <u>see</u> <u>Keenan v. Hall</u>, 83 F.3d 1083, 1091-91 (9th Cir. 1996) (plaintiff alleged "that

13   large florescent lights directly in front of and behind his cell shone into his cell 24 hours a

14   day"), Plaintiff has not alleged enough facts for his claim to rise to the level of a

15   constitutional violation. Plaintiff does not describe the type of illumination at issue and does

16   not explain how he was specifically harmed by the constant illumination.

17   Accordingly, the Court will dismiss Count I for failure to state a claim upon which

18   relief may be granted.

19   **B.    Count II**

20   In Count II, Plaintiff claims that his Eighth and Fourteenth Amendment rights to

21   "constitutionally sufficient medical care" and to "freedom from cruel and unusual

22   punishment" were violated by Defendants Ryan, Brewer, Ahee, and Horne.

23   Plaintiff alleges that the policies of **Defendant Ryan** "served to deny medical care to

24   Plaintiff Olmos when ADC medical staff enforced those policies by (a) refusing to process

25   medical request forms . . . , (b) refusing to provide Plaintiff Olmos medical care with over-

26   the-counter medications and medical remedies . . . and, (c) refusing to treat his flu and the

27   pandemic at Winchester per CDC outlines for prisons." Plaintiff further alleges that

28   "Defendant Ryan's systemwide understaffing of ADC's medical and health care system led

to delays in care for Plaintiff."  Plaintiff also alleges that "Defendant Ryan's medical prescription policies led to Plaintiff Olmos being prescribed ineffective allergy medicine as part of the inappropriate treatment he received."

Plaintiff's allegations against Defendant Ryan in Count II are too conclusory and vague to state a claim for relief under the Eighth and Fourteenth Amendments.  Although Plaintiff alleges that Defendant Ryan's policies served to deny medical care to Plaintiff and led to being prescribed ineffective allergy medicine, Plaintiff has not described the policies at all.  Also, Plaintiff's allegation of systemwide understaffing is not only vague but also insufficient because a mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference under the Eighth Amendment.  See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff alleges that **Defendant Ahee** "provided Plaintiff Olmos with insufficient pain medication (according to prevailing professional standards) after performing oral surgery on him for an impacted wisdom tooth."

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment.  To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain

1    or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096.

2    Medical malpractice or negligence is insufficient to establish a violation. Toguchi,

3    391 F.3d at 1060. Thus, mere negligence in diagnosing or treating a condition does not

4    violate the Eighth Amendment. Toguchi, 391 F.3d at 1057. Also, an inadvertent failure to

5    provide adequate medical care alone does not rise to the Eighth Amendment level. Jett, 429

6    F.3d at 1096. A difference in medical opinion also does not amount to deliberate

7    indifference. Toguchi, 391 F.3d at 1058.

8    Plaintiff's allegation against Defendant Ahee is insufficient to state an Eighth

9    Amendment claim for inadequate medical care. Plaintiff's allegation is conclusory and

10   vague because Plaintiff does not allege what medication he was given and show how it was

11   "insufficient." Moreover, Plaintiff does not allege deliberate indifference on the part of

12   Defendant Ahee.

13   Plaintiff also alleges that **Defendants Brewer** and **Horne** "are responsible for [state

14   legislation that] served to diminish the medical and health services available to Plaintiff

15   Olmos." Plaintiff further alleges that this state legislation mandated "the privatization of

16   ADC's medical and health care system" at lower funding levels and "a 5% reduction in force

17   for all state departments." Plaintiff asserts that "Defendant Brewer, in her official capacity

18   as head of Arizona's Executive Branch of Government, is responsible for the implementation

19   of these laws" and that "Defendant Horne, in his official capacity as Attorney General of the

20   State of Arizona, is responsible for the enforcement of the foregoing laws."

21   The roles that Defendants Brewer and Horne play in implementing and enforcing state

22   law in general are simply too attenuated to personally link them to the denial of

23   constitutionally sufficient medical care to Plaintiff in prison. Rizzo v. Goode, 423 U.S. 362,

24   371-72 (1976). To state a claim against a state official, the civil rights complainant must

25   allege that the official personally participated in the constitutional deprivation, or that a state

26   supervisory official was aware of the widespread abuses and with deliberate indifference to

27   the inmate's constitutional rights failed to take action to prevent further misconduct. King,

28   814 F.2d at 568; see also Monell v. New York City Department of Social Services, 436 U.S.

1  658, 691 (1978); <u>Williams v. Cash</u>, 836 F.2d 1318, 1320 (11th Cir. 1988).  Plaintiff has done

2  neither.

3      Accordingly, the Court will dismiss Count II for failure to state a claim upon which

4  relief may be granted.

5      **C.      Count III**

6      In Count III, Plaintiff claims that his Eighth and Fourteenth Amendment rights were

7  violated by Defendant Ryan when he failed to provide Plaintiff with basic necessities at state

8  expense and by Defendant Canteen when it provided him with constitutionally insufficient

9  food.

10     Plaintiff alleges that **Defendant Ryan** fails to provide Plaintiff with "sufficient

11  (a) nutrition that meets the U.S. Department of Agriculture's latest <u>Dietary Guidelines for</u>

12  <u>Americans,</u> (b)   clothing   between   launderings,   (c)   hygiene   products   .  .  .  ,

13  (d) cleaning/sanitation supplies, and (e) living facilities."   Plaintiff also alleges that

14  Defendant Ryan "continues to house inmates in overcrowded dorms" and "fails to provide

15  sufficient numbers of security staff" and "a working system at Winchester and South to

16  notify staff of emergencies after all doors are locked." Plaintiff asserts that the "combination

17  of overcrowding and understaffing has led to large increases in violence among inmates."

18     Liberally construed, Plaintiff has stated an Eighth and Fourteenth Amendment claim

19  in Count III against Defendant Ryan.  Accordingly, the Court will required Defendants Ryan

20  to answer Count III.

21     Plaintiff alleges that **Defendant Canteen** "continues its practice of underfeeding

22  Plaintiff Olmos by either watering down food or serving smaller portions than the contract

23  calls for" and "has also served expired food."   Plaintiff's allegations against Defendant

24  Canteen do not rise to the level of constitutional violations.  Simply failing "to provide food

25  pursuant to its food service contract" or occasionally serving "expired food" is not sufficient

26  to state a claim under the Eighth and Fourteenth Amendments.

27     Accordingly, the Court will dismiss Plaintiff's claims in Count III against Defendant

28  Canteen for failure to state a claim upon which relief may be granted.

1    **D.    Count IV**

2    In Count IV, Plaintiff claims that his First, Fifth, and Fourteenth Amendment rights

3    were violated by **Defendant Ryan** when he "violated Plaintiff Olmos' right to adequate,

4    meaningful access to the courts" by continuing "ADC's longstanding policy of not providing

5    the generalized legal research tools needed by inmates in order to attack their sentences,

6    directly or collaterally, or to challenge the conditions of their confinement."

7    Prisoners have a constitutional right of access to the courts. Lewis v. Casey, 518 U.S.

8    343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Coronet v. Donovan, 51 F.3d

9    894, 897 (9th Cir. 1995).  The constitutional source of the right of access to the courts is not

10   settled.  See Lewis, 518 U.S. at 366-67 (Thomas, J., concurring).  The Supreme Court in

11   Bounds appears to consider the source to be the Fourteenth Amendment.  See Bounds, 430

12   U.S. at 818.  The Ninth Circuit Court of Appeals has stated that "[t]he right of access is

13   grounded in the Due Process and Equal Protection Clauses." Coronet, 51 F.3d at 897.  In any

14   event, the right of access to the courts is a "fundamental constitutional right."  Bounds, 430

15   U.S. at 828.

16   To establish that he was denied meaningful access to the courts, a plaintiff must

17   submit evidence showing that he suffered an "actual injury" as a result of the defendants'

18   actions.  Lewis, 518 U.S. at 349.  However, "the injury requirement is not satisfied by just

19   any type of frustrated legal claim." Id. at 354.  The legal claim must be "an actionable claim"

20   challenging "sentences or conditions of confinement."  Id. at 356.  "Impairment of any other

21   litigating capacity is simply one of the incidental (and perfectly constitutional) consequences

22   of conviction and incarceration."  Id. at 355.  Also, "the constitutional right of access requires

23   a state to provide a law library or legal assistance only during the pleading stage of a habeas

24   or civil rights action."  Coronet, 894 F.3d at 898.

25   "[A]n inmate cannot establish relevant actual injury simply by establishing that his

26   prison's law library or legal assistance program is sub-par in some theoretical sense." Lewis,

27   518 U.S. at 351.  "[T]he Constitution does not require that prisoners (literate or illiterate) be

28   able to conduct generalized research, but only that they be able to present their grievances

1   to the courts – a more limited capability that can be produced by a much more limited degree

2   of legal assistance." Id. at 360.

3       Plaintiff has failed to show in Count IV that he has suffered actual injury by being

4   prevented from filing an actionable claim.  Plaintiff's conclusory and vague claim that he has

5   "suffered the loss of legal cases at the federal and state courts" is insufficient.

6       Accordingly, the Court will dismiss Count IV for failure to state a claim upon which

7   relief may be granted.

8       **E.      Count V**

9       In Count V, Plaintiff claims that his Fifth and Fourteenth Amendment rights were

10  violated by **Defendant Keefe**, who operates the "inmate store," when Defendant Keefe

11  violated a state statute by "(1) charging inmate store prices that were and still are higher than

12  the prices of similar retail products; and (2) continuing to raise prices on inmate store

13  products after the authorized time frame to do so had expired."

14      Inmates do not have a constitutional right to "canteen products." Keenan, 83 F.3d at

15  1092.  Because Plaintiff does not have a constitutional right to purchase items from the

16  "inmate store," it follows that he does not have a constitutional right to lower prices.

17      Accordingly, the Court will dismiss Count V for failure to state a claim upon which

18  relief may be granted.

19      **F.      Count VI**

20      In Count VI, Plaintiff claims that his Fifth, Eighth, and Fourteenth Amendment rights,

21  as well as his rights under "federal OSHA regulations (codified as 29 CFR §§ 1903, -1904,

22  -1910, -1990)," were violated by Defendants Ryan and Canteen when they failed to provide

23  him with a "safe working environment as an inmate kitchen worker."

24      The Court will treat Count VI as being brought solely under the Eighth and Fourteenth

25  Amendments because Plaintiff has not explained how any of the actions he complains about

26  in Count VI violated his Fifth Amendment rights and the Court is unable to ascertain a Fifth

27  Amendment right that may be implicated by Plaintiff's allegations..

28      Plaintiff alleges that **Defendant Ryan**'s "facilities at Winchester violated OSHA

1   requirements via an undersized workspace that placed Plaintiff Olmos at constant risk of

2   being burned or suffering injuries" and also "violated OSHA requirements by not providing

3   the required number of toilets for the total number of inmates from all shifts that worked

4   there."

5          As previously noted, the subjective prong needed to show a violation of the Eighth

6   Amendment relating to the denial of humane conditions requires that the inmate demonstrate

7   that the deprivation was a product of "deliberate indifference" by prison personnel.  Wilson,

8   501 U.S. at 302-03.  Such indifference can only occur if "the official knows of and disregards

9   an excessive risk to inmate health or safety; the official must both be aware of facts from

10  which the inference could be drawn that a substantial risk of serious harm exits, and he must

11  also draw the inference."  Farmer, 511 U.S. at 837.  However, Plaintiff has failed to show

12  that Defendant Ryan personally knew of the conditions about which Plaintiff complains in

13  Count VI.  It is insufficient to allege that these conditions existed at one of "Defendant

14  Ryan's facilities."

15         Plaintiff alleges that **Defendant Canteen** "violated OSHA requirements by

16  promulgating a rule that excludes inmates from drinking water while working."  This claim

17  against Defendant Canteen must fail because Plaintiff does not allege any injury from this

18  rule.  Instead, Plaintiff alleges that the "water prohibition did not inflict any physical injuries

19  outside of the attempted imposition of this illegal rule, for Plaintiff Olmos disregarded the

20  rule by sneaking drinks of water anyway."  Moreover, the Court notes that "complete

21  compliance with the numerous OSHA regulations" has not been found to be required under

22  the Eighth Amendment.  French v. Owens, 777 F.2d 1250, 1257 (7th Cir. 1985); see also

23  Sampson v. King, 693 F.2d 566, 569 (5th Cir. 1982) (citation omitted) ("In operating a

24  prison, . . . the state is not constitutionally required to observe all the safety and health

25  standards applicable to private industry.").

26         Plaintiff also alleges that while he was "working at the kitchen facilities at Morey and

27  Winchester" he "was not provided proper personal protection equipment for the hands, face,

28  body, and feet," and "he witnessed that the vermin control program for the Winchester

1   Kitchen was inadequate to control its problem with mice and roaches."  Plaintiff further

2   alleges that he "does not know whether it is the responsibility of Defendant Ryan or

3   Defendant Canteen" to "fulfill personal protection equipment requirements" or "to control

4   kitchen vermin."  These allegations fail to state claim under the Eighth Amendment because

5   the are conclusory and vague and not only has Plaintiff failed to link them to the actions of

6   either Defendant Ryan or Defendant Canteen, but also Plaintiff has failed to allege any

7   deliberate indifference by either Defendant.

8       Accordingly, the Court will dismiss Count VI for failure to state a claim upon which

9   relief may be granted.

10      **G.    Count VII**

11      In Count VII, Plaintiff claims that his Fifth and Fourteenth Amendment rights to "due

12  process, equal protection, and freedom from unconstitutional takings" were violated by

13  Defendants Ryan, Brewer, and Horne when "illegal deductions" were made from Plaintiff's

14  "prisoner spendable account."

15      Plaintiff alleges that **Defendant Ryan** "violated Plaintiff Olmos' right to be free from

16  paying assessments and fees that have not been authorized by the legislature via a properly

17  enacted statute," as required by the Arizona Constitution, by "promulgating ADC policies

18  that charge inmates for photocopies, legal phone calls, legal supplies (paper, pens, etc.), legal

19  mail postage, repayment for positive urinalysis tests, uneaten special diets, follow-up visits

20  and prescription renewals for chronic diseases in violation of A.R.S. § 31-201.01(I)(12),

21  replacement ID cards and ID clips, and GED testing."  Plaintiff alleges that none of these

22  charges is "grounded by a properly-enacted statute."

23      Liberally construed, Plaintiff has stated a due process against Defendant Ryan.

24  Accordingly, the Court will required Defendant Ryan to answer Plaintiff's due process claim

25  in Count VII.  However, the Court will not require Defendant Ryan to answer Plaintiff's

26  equal protection and "unconstitutional takings" claims in Count VII.

27      Generally, "[t]o state a claim . . . for a violation of the Equal Protection Clause . . . [,]

28  a plaintiff must show that the defendants acted with an intent or purpose to discriminate

1   against the plaintiff based upon membership in a protected class." <u>Barren v. Harrington</u>, 152

2   F.3d 1193, 1194 (9th Cir. 1998).  Plaintiff has not alleged he is a member of a protected

3   class.

4        The United States Supreme Court has also recognized "successful equal protection

5   claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally

6   treated differently from others similarly situated and that there is no rational basis for the

7   difference in treatment." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>see</u>

8   <u>also</u> <u>SeaRiver Maritime Financial Holdings, Inc. v. Mineta</u>, 309 F.3d 662, 679 (9th Cir.

9   2002).  Even under this standard, Plaintiff has failed to state a claim.  Plaintiff has failed to

10  allege that he is being treated differently than other similarly situated individuals and that

11  there was no rational basis for treating him differently.  Therefore, Plaintiff has failed to state

12  an equal protection claim against Defendant Ryan in Count VII.

13       The Fifth Amendment Takings Clause prohibits the taking of private property for

14  public use without just compensation.  "In order to state a claim under the Takings Clause,

15  a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally

16  protected." <u>Schneider v. California Dept. of Corrections</u>, 151 F.3d 1194, 1198 (9th Cir.

17  1998).  Additionally, a prisoner cannot establish a taking under the Fifth Amendment absent

18  a showing that his property was taken for public use. <u>Allen v. Wood</u>, 970 F. Supp. 824, 831

19  (E.D. Wash. 1997).  Plaintiff has not alleged that Defendant Ryan took his property and

20  converted it for public use. Therefore, Plaintiff has failed to state a Takings Clause claim

21  against Defendant Ryan in Count VII.

22       Plaintiff  alleges that **Defendant Brewer** is "responsible for the implementation" of

23  state laws "to fund a transition program" and that **Defendant Horne** "is responsible for the

24  enforcement" of the these laws.  Plaintiff further alleges that these state laws "order[] a 5%

25  deduction from an inmate's gross wages to fund a transition program, even if the inmate is

26  statutorily excluded form participating in said program."  Plaintiff asserts that Defendants

27  Brewer and Horn have violated his constitutional rights "by the implementation and

28  enforcement of statutes that serve to make illegal deductions from Plaintiff Olmos' prisoner

1   spendable account, for Plaintiff Olmos is statutorily excluded from participating in the
2   transition program."

3       Plaintiff's allegations against Defendants Brewer and Horn are conclusory and vague.
4   Plaintiff does not allege how the statute requiring a 5% deduction from his wages is "illegal."
5   Moreover, the roles that Defendants Brewer and Horne play in implementing and enforcing
6   state law in general are too attenuated to personally link them to the denial of any
7   constitutional rights Plaintiff may have in not having deductions made from his wages in
8   prison.  Rizzo, 423 U.S. at 371-72.

9       As previously noted, to state a claim against a state official, the civil rights
10  complainant must allege that the official personally participated in the constitutional
11  deprivation, or that a state supervisory official was aware of the widespread abuses and with
12  deliberate indifference to the inmate's constitutional rights failed to take action to prevent
13  further misconduct.  King, 814 F.2d 5at 568; see also Monell, 436 U.S. at 691; Williams, 836
14  F.2d at 1320.  Plaintiff has done neither.

15      Accordingly, the Court will dismiss Plaintiff's claims in Count VII against Defendants
16  Brewer and Horne for failure to state a claim upon which relief may be granted.

17      **H.    Count VIII**

18      In Count VIII, Plaintiff claims that his Fifth and Fourteenth Amendment rights were
19  violated by **Defendant Ryan** when he "failed to pay either actual or constructive interest on
20  moneys that have been held in Plaintiff Olmos' prisoner spendable account and dedicated
21  discharge account."  Plaintiff alleges that this amounts to "an unconstitutional taking of his
22  property."

23      Liberally construed, Plaintiff has stated a Fifth and Fourteenth  Amendment claim in
24  Count VIII.  See Schneider v. California Dep't of Corrections, 151 F.3d 1194 (9th Cir. 1998)
25  (despite California statute to the contrary, inmate possesses constitutionally cognizable
26  property interest in interest earned on funds in inmate's personal account); see also Tellis v.
27  Godinez, 5 F.3d 1314 (9th Cir. 1993) (under provisions of Nevada statute, inmates had
28  property interest in interest earned on funds in inmate's personal account).

1   Accordingly, the Court will required Defendant Ryan to answer Count VIII.

2   **I.      Count IX**

3   In Count IX, Plaintiff claims that his Fifth and Fourteenth Amendment rights to "due

4   process, equal protection, and freedom from unconstitutional takings" were violated by

5   Defendants Ryan and Hall when they abridged his "state-created property interests."

6   Plaintiff alleges that **Defendant Ryan** "violated the inmate compensation

7   requirements of A.R.S. § 31-254(A) and A.R.S. § 41-1624.01(A)-(B)," that he "downgraded

8   the skill level of education aides . . . from skilled to semi-skilled when an automated system

9   (called TOSS) was rolled out without changing any of the duties of the position to reflect the

10  lowered skill level, resulting in a 5¢ per hour decrease in compensation," and that he has

11  "continued the ADC's policy of not paying kitchen and inmate store workers (who perform

12  labor or services for Defendants Canteen and Keefe, who are private contractors) a minimum

13  of $2.00 per hour."  Plaintiff further alleges that Defendant Ryan "financially injured" him

14  "by underpaying him 5¢/hour in his current position as an education aide."

15  Liberally construed, Plaintiff has stated a due process against Defendant Ryan.  See

16  Piatt v. MacDougall, 773 F.2d 1032 (9th Cir. 1985) (en banc) (where state statute provides

17  inmates right to compensation, state cannot deny compensation without due process).

18  Accordingly, the Court will required Defendant Ryan to answer Plaintiff's due process

19  claim in Count IX.  However, as explained in more detail below, the Court will not require

20  Defendant Ryan to answer Plaintiff's equal protection and "unconstitutional takings" claims

21  in Count IX.

22  Plaintiff alleges that **Defendant Hall** "refused to pay Winchester inmates pursuant to

23  ADC's pay scale outlined in DO 903, in violation of his duties as the inmate pay

24  coordinator."  Plaintiff further alleges that Defendant Hall "financially injured" him "by

25  underpaying him for his past work as a Winchester kitchen worker."

26  A state employee who intentionally and without authorization deprives a person of his

27  property does not violate the Due Process Clause if a meaningful post-deprivation remedy

28  for the loss is available.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  A prison grievance

procedure for property loss claims can provide an adequate post-deprivation remedy.  See Al-Ra'id v. Ingle, 69 F.3d 28, 32 (5th Cir. 1995); see also Wright v. Riveland, 219 F.3d 905, 918 (9th Cir. 2000) (prisoners in Washington have adequate post-deprivation remedies to challenge deductions from inmate accounts by utilizing the prison grievance procedure or by filing a state tort action).

The ADC provides a grievance procedure for property claims.  See Department Order 909.12.  Arizona prison inmates can use the inmate grievance system to file claims seeking reimbursement for property loss or damage.  Id.  Because Plaintiff has an adequate post-deprivation remedy through the prison grievance procedure, he has failed to state a claim under the Due Process Clause against Defendant Hall in Count IX.

Plaintiff has failed to state an equal protection claim against either Defendant Ryan or Hall in Count IX because he does not allege in Count IX that he is being treated differently than other similarly situated individuals and that there was no rational basis for treating him differently.  Also, Plaintiff has failed to state a Takings Clause claim against either Defendant Ryan or Hall in Count IX because he has not alleged that Defendant Ryan or Hall took his property and converted it for public use.

Accordingly, the Court will dismiss Plaintiff's claims in Count IX against Defendant Hall and will dismiss Plaintiff's equal protection and Takings Clause claims against Defendant Ryan for failure to state a claim upon which relief may be granted.

**J.      Count X**

In Count X, Plaintiff claims that his Fifth and Fourteenth Amendment rights to "due process, equal protection, and freedom from unconstitutional takings" were violated by **Defendant Ryan** when he promulgated "an ADC policy that demands that Plaintiff Olmos surrender all orange-colored clothing purchased at the inmate store to ADC staff on his release date without any compensation."  Plaintiff alleges that "[u]pon release," he "will incur a property injury by having his clothing taken by ADC staff due to Defendant Ryan's policy" and he will be injured financially by "being compelled to purchase replacement clothing."  Although Plaintiff does not allege that he has actually been injured yet, he does

1   seek both declaratory and prospective injunctive relief.

2       Liberally construed, Plaintiff has stated a due process against Defendant Ryan.

3   Accordingly, the Court will required Defendant Ryan to answer Plaintiff's due process claim

4   in Count X.  However, for the same reasons discussed above in Count VII, the Court will

5   dismiss Plaintiff's equal protection and Takings Clause claims in Count X against Defendant

6   Ryan for failure to state a claim upon which relief may be granted.

7       **K.**    **Count XI**

8       In Count XI, Plaintiff claims that his right to be free from prison mail policies that

9   either violate the First, Fifth, Sixth, and Fourteenth Amendments or "do not pass the tests of

10  <u>Turner v. Safley</u>, 482 U.S. 78 (1987), or <u>Procunier v. Martinez</u>, 416 U.S. 396 (1974)," was

11  violated by Defendant Ryan when he enacted "ADC mail policies that do not pass legal

12  muster."  Plaintiff alleges that **Defendant Ryan** has "enacted a legal mail definition that is

13  too narrow in scope" and that has led to his "legal mail being opened on multiple occasions."

14  Plaintiff further alleges that Defendant Ryan has instituted "incoming mail policies" that

15  "abridg[e] his free speech rights in a manner that does not pass the <u>Turner</u> test" and also has

16  instituted a "policy that all outgoing legal mail must be mailed using first[-]class postal

17  delivery" that violates Plaintiff's rights to "due process, equal protection, freedom from

18  unconstitutional takings, and freedom from outgoing mail policies that do not pass the strict

19  scrutiny test of <u>Procunier</u> by compelling Plaintiff Olmos to pay more postage than is

20  necessary to mail his legal mail."

21      Plaintiff's claim that Defendant Ryan's legal mail definition is "too narrow" will be

22  dismissed for failure to state a claim upon which relief may be granted.  This claim is very

23  conclusory and vague.  Plaintiff does not allege what the legal mail definition is or why it is

24  "too narrow."

25      Additionally, Plaintiff's claim that Defendant Ryan's "policy that all outgoing legal

26  mail must be mailed using first[-]class postal delivery" will be dismissed for failure to state

27  a claim upon which relief may be granted.  This claim is also very conclusory and vague.

28  Plaintiff does not allege how he is being denied due process or equal protection by this policy

1    and does not allege how being required to use first-class postal delivery constitutes an
2    unconstitutional taking or does not pass the strict scrutiny test of <u>Procunier</u>.  The Court is
3    unaware of any constitutional right requiring an inmate to be allowed to use the cheapest
4    method of postal delivery for his outgoing legal mail.  Indeed, in certain instances the use of
5    first-class postage is important in federal court.  For example, Rule 4(c)(1) of the Federal
6    Rules of Appellate Procedure provides in part that the filing of a notice of appeal by an
7    inmate in either a civil or criminal case "is timely if it is deposited in the institution's internal
8    mail system on or before the last day for filing" and "timely filing may be shown by a
9    declaration . . . or by a notarized statement, either of which must set forth the date of deposit
10   and state that first-class postage was prepaid."

11          Liberally construed, Plaintiff has stated a First and Fourteenth Amendment claim
12   against Defendant Ryan in Count XI regarding his incoming mail policies.  Accordingly, the
13   Court will require Defendant Ryan to answer this claim.

14          **L.     Count XII**

15          In Count XII, Plaintiff claims that his First, Fifth, and Fourteenth Amendment rights
16   were violated by Defendants "Unknown ADC mail room staff at ASPC Lewis Complex
17   and/or Morey" when, on or about November 29, 2007, they "seized a subpoena that Plaintiff
18   Olmos was informally serving upon the Chandler Unified School District."  Plaintiff alleges
19   that "unknown ADC staff censured the aforementioned subpoena by faxing a copy of it to
20   the County Attorney's Office,"

21          Title 28 U.S.C. § 1915A(b)(1) mandates that the Court dismiss a complaint if it is
22   frivolous, malicious, or fails to state a claim upon which relief may be granted.  Moreover,
23   "an action may be dismissed . . . where the defense is complete and obvious from the face
24   of the pleadings."  <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1228 (9th Cir. 1984).  In the absence
25   of waiver, the Court may raise the defense of statute of limitations *sua sponte*.  <u>Levald, Inc.</u>
26   <u>v. City of Palm Desert</u>, 998 F.2d 680, 687 (9th Cir. 1993).

27          In actions under 42 U.S.C. § 1983, the applicable statute of limitations is the forum
28   state's statute of limitations for personal injury actions.  <u>Wilson v. Garcia</u>, 471 U.S. 261, 266,

274-76 (1985); Vaughan v. Grijalva, 927 F.2d 476, 478 (9th Cir. 1991).  The Arizona statute of limitations for personal injury actions is two years.  See Ariz. Rev. Stat. § 12-542(1); Madden-Tyler v. Maricopa County, 943 P.2d 822, 824 (Ariz. Ct. App. 1997); Vaughan, 927 F.2d at 478.

Plaintiff's allegations in Count XII involved actions that occurred on November 2, 2007, over three years before Plaintiff filed the original Complaint in this action.  Thus, Plaintiff's claim in Count XII is barred by the statute of limitations.

Accordingly, the Court will dismiss Count XII for failure to state a claim upon which relief may be granted.

**M.     Count XIII**

In Count XIII, Plaintiff claims that his Fourteenth Amendment rights were violated by Defendant Ryan when he failed "to protect [Plaintiff's] personal property against damage during a non-disciplinary-related institutional move."  Plaintiff alleges that Defendant Ryan's "property policy requires, that when an inmate is moved a distance of fifteen miles or more, his appliances are to be packed in boxes."  Thus, Plaintiff asserts that the "onus was on Defendant Ryan to provide ADC staff with boxes pursuant to ADC policy" and that Defendant Ryan "personally participated in this deprivation by refusing to provide packing material to ADC staff as required by the aforementioned ADC policy."

Because Plaintiff has an adequate post-deprivation remedy through the prison grievance procedure for Defendant Ryan's allegedly intentional and unauthorized deprivation of packing boxes to safely transport Plaintiff's appliances, he has failed to state a claim under the Due Process Clause of the Fourteenth Amendment against Defendant Ryan in Count XIII.  See Hudson, 468 U.S. at 533.

Accordingly, the Court will dismiss Count XIII for failure to state a claim upon which relief may be granted.

**N.     Count XIV**

In Count XIV, Plaintiff claims that his right to be free from prison policies that do not pass the test set out in Turner v. Safley, 482 U.S. 78 (1987), was violated by Defendant

Ryan.   Plaintiff alleges that Defendant Ryan is "responsible" for numerous "ADC Department Orders that do not pass the Turner test," including "Orders" that deal with such things as hair length, banning beards, tucking in shirts, the wearing of sweat pants and gym shorts, going shirtless, covering up thermal shirts, appearance changes, the use of empty containers to organize living areas, homemade lamp shades, making beds, limiting television channels, providing legal assistance to other inmates, possessing legal materials of other inmates, possessing typewriters and computers, limiting clothing and laundry bags, limiting legal books, regulating the identification and storage of religious items, limiting the value of an inmate's property, inmate property specifications, and eating leftovers.

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must show that the conduct of a Defendant deprived him of a constitutional right.   Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).   However, Plaintiff has failed to allege the violation of any specific constitutional provision in Count XIV.   The test set out in Turner to which Plaintiff refers is a test used by the courts to determine if a prison regulation that "impinges on inmates' constitutional rights" is valid.   Turner, 482 U.S. at 89.   However, Plaintiff has not alleged that any of the "Orders" that he complains about in Count XIV impinge on a particular constitutional right.

Accordingly, the Court will dismiss Count XIV for failure to state a claim upon which relief may be granted.

**O.     Count XV**

In Count XV, Plaintiff claims that his First, Fifth, and Fourteenth Amendment rights were violated by Defendants "Unknown ADC staff," Ortega, Cardoza, and Brockman when they used the "ADC's disciplinary policy to retaliate" against Plaintiff "without a legitimate penological interest for properly exercising his right to free speech."

Plaintiff alleges that he wrote to the Kansas Department of Corrections (KDOC) "in order to acquire information regarding the access to the courts it provides to inmates," and that "in addition to providing Plaintiff Olmos with the information," the "KDOC notified ADC administration of the inquiry out of courtesy and included a copy of Plaintiff Olmos'

1    letter."  Plaintiff further alleges that Defendant **Unknown ADC staff** "ordered Defendant

2    Ortega to 'take care' of Plaintiff Olmos, even though an unbiased review of the letter in

3    question made it clear that the letter did not violate either state law or ADC policy," and that

4    **Defendant Ortega** "initiated disciplinary proceedings by charging Plaintiff Olmos with

5    fraud, even though Plaintiff Olmos' actions did not satisfy the fraud elements."

6          Liberally construed, Plaintiff has stated a retaliation claim against Defendant

7    "Unknown ADC staff" and Defendant Ortega.  The Court will therefore require Defendant

8    Ortega to answer Count XV.  However, the Court will not direct that service be made on

9    Defendant  "Unknown ADC Administrator(s)" at ADC at this time.[1]

10         Plaintiff may use the discovery processes to obtain the name of the person who he

11   believes violated his constitutional rights.  If Plaintiff discovers the true identity of this

12   fictitious party through the discovery process, or otherwise, he may seek leave of the Court

13   to amend his Complaint to name the individual in place of Defendant "Unknown ADC

14   Administrator(s)."

15         Plaintiff also alleges that **Defendant Cardoza** "called Plaintiff Olmos to defend

16   himself in a disciplinary hearing, even though the disciplinary clearly showed that Plaintiff

17   Olmos had not been served a copy of the disciplinary report prior to the hearing," and that

18   "Defendant Cardoza abused his discretion by modifying the fraud charge" to a charge that

19   "not only did not exist in ADC policy as a disciplinable offense, but also did not share a

20   single element of the original fraud charge."  Lastly, Plaintiff alleges that **Defendant**

21   **Brockman** sustained the "invalid disciplinary report" against Plaintiff.

22         Plaintiff has failed to state a claim for retaliation against Defendants Cardoza and

23   Brockman because Plaintiff does not allege that they acted with a retaliatory motive.  Also,

24   to the extent that Plaintiff may be attempting to bring a due process claim against them, the

25   due process claim must fail.

26

27         [1]The Court presumes that the Defendant "Unknown ADC staff" that Plaintiff is

28   referring to is the Defendant named in the First Amended Complaint as "Unknown ADC
     Administrator(s)."

1    In analyzing a due process claim, the Court must first decide whether Plaintiff was

2  entitled to any process, and if so, whether he was denied any constitutionally required

3  procedural safeguard.  Liberty interests which entitle an inmate to due process are "generally

4  limited to freedom from restraint which, while not exceeding the sentence in such an

5  unexpected manner as to give rise to protection by the Due Process Clause of its own force,

6  nonetheless imposes atypical and significant hardship on the inmate in relation to the

7  ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal

8  citations omitted).

9    Therefore, to determine whether an inmate is entitled to the procedural protections

10  afforded by the Due Process Clause of the Fourteenth Amendment, the Court must look to

11  the particular restrictions imposed and ask whether they "'present the type of atypical,

12  significant deprivation in which a state might conceivably create a liberty interest.'" Mujahid

13  v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995) (quoting Sandin, 515 U.S. at 486).

14    To determine whether the sanctions are atypical and a significant hardship, courts look

15  to prisoner's conditions of confinement, the duration of the sanction, and whether the

16  sanction will affect the duration of the prisoner's sentence.  See Keenan, 83 F.3d at 1088-89.

17  "Atypicality" requires not merely an empirical comparison, but turns on the importance of

18  the right taken away from the prisoner.  See Carlo v. City of Chino, 105 F.3d 493, 499 (9th

19  Cir. 1997).  See e.g., Sandin, 515 U.S. at 472 (30 days' disciplinary segregation is not

20  atypical and significant); Torres v. Fauver, 292 F.3d 141, 151 (3rd Cir. 2002) (four months

21  in administrative segregation is not atypical and significant);   Jacks v. Crabtree, 114 F.3d

22  983 (9th Cir. 1997) (denial of year sentence reduction is not an atypical and significant

23  hardship); Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (two and one-half years of

24  administrative segregation is not atypical and significant); Griffin v. Vaughn, 112 F.3d 703,

25  706-708 (3rd Cir. 1997) (fifteen months' administrative segregation is not atypical and

26  significant); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (six months of confinement

27  in especially disgusting conditions that were "more burdensome than those imposed on the

28  general prison population" were not "atypical . . . in relation to the ordinary incidents of

1   prison life").

2   In Count XV, Plaintiff has not alleged or shown that sanctions imposed as a result of

3   his disciplinary conviction violated a liberty interest he had under the Due Process Clause

4   itself, or imposed an "atypical and significant hardship" on him.  <u>Sandin</u>, 515 U.S. at 484.

5   Indeed, Plaintiff has not identified any of the sanctions imposed on him.  Therefore, Plaintiff

6   has failed to state a cognizable due process claim against Defendants Cardoza and Brockman.

7   Accordingly, Plaintiff's claims against Defendants Cardoza and Brockman in Count

8   XV will be dismissed for failure to state a claim upon which relief may be granted.

9   **VII.   Dismissal of Defendants**

10   Because no claims remain against them, the Court will dismiss Defendants GEO,

11   Canteen, Keefe, Brewer, Ahee, Cardoza, "Unknown ADC Security Officer(s)" at the Mail

12   Room of the Arizona State Prison Complex-Lewis (ASPC-Lewis) and/or the Morey Unit of

13   ASPC-Lewis, Hall, Horne, and Brockman from this action for failure to state a claim upon

14   which relief may be granted.

15   **VIII.   Motion for Order to Return Documents Not Filed by Clerk**

16   On March 2, 2011, Plaintiff filed a "Motion For Order To Return Of Documents Not

17   Filed By Clerk" (Doc. 20), in which he moves the Court to order the Clerk of Court to return

18   the "556-page 'Complaint Addendum' (Docs. 2 [part] and 3) and 'Memorandum Establishing

19   Conformance With 42 U.S.C. § 1997(e)['] (Doc. 8), which is over 150 pages in length."

20   Plaintiff alleges that he cannot afford to recopy these documents.

21   By Order filed February 9, 2011 (Doc. 11), the Court directed the Clerk of Court not

22   to file these two lodged documents.  For good cause shown, the Court will grant Plaintiff's

23   Motion and direct the Clerk of Court to return the unfiled documents to Plaintiff.

24   **IX.   Motion for Assistance in Locating Select Defendants for Service**

25   On May 2, 2011, Plaintiff filed a "Motion For Assistance In Locating Select

26   Defendants For Service Of Pleadings" (Doc. 25), in which Plaintiff moves the Court to "order

27   Defendant Ryan and/or the Arizona Attorney General to assist Plaintiff and the U.S. Marshal[]

28   in locating and serving Defendants Ahee, Hall, Ortega, and Brockman."  Plaintiff's Motion

TERMPSREF                                           - 24 -

1   will be denied without prejudice.

2       This Order dismisses Defendants Ahee, Hall, and Brockman from this action and

3   therefore, there is no need for Plaintiff to locate and serve these Defendants.  As to Defendant

4   Ortega, Plaintiff states that his "only confirmed information on Defendant Ortega is his officer

5   badge number (CO II # 2083) at the time of the incident described in Count XV" and that

6   Defendant Ortega's "first name and current employment information/location was provided

7   to Plaintiff by a prison staff member that did not know Defendant Ortega personally."

8   Accordingly, it appears that Plaintiff has sufficient information to complete a service packet

9   for Defendant Ortega.  If Plaintiff's information proves to be insufficient, and the U.S.

10  Marshal is unable to obtain enough information to serve Defendant Ortega, then Plaintiff may

11  approach the Court with this matter again.

12  **X.    Warnings**

13      **A.    Release**

14      Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.

15  Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay

16  the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result

17  in dismissal of this action.

18      **B.    Address Changes**

19      Plaintiff must file and serve a notice of a change of address in accordance with Rule

20  83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other

21  relief with a notice of change of address.  Failure to comply may result in dismissal of this

22  action.

23      **C.    Copies**

24      Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy

25  of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate

26  stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit

27  an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply

28  may result in the filing being stricken without further notice to Plaintiff.

### D.   Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)   Plaintiff's "Motion For Enlargement Of Time To File First Amended Complaint" (Doc. 19) is **granted** and Plaintiff's First Amended Complaint (Doc. 21), which was filed on March 14, 2011, is accepted as being timely filed.

(2)   Plaintiff's "Motion For Leave To Suspend Enforcement Of Local Rules Upon Pro Se Litigant" (Doc. 23) is **granted** to the extent that the Court accepts Plaintiff's First Amended Complaint (Doc. 21) in the form in which it was filed.

(3)   Plaintiff's "Motion For Order To Return Of Documents Not Filed By Clerk" (Doc. 20) is **granted** and the Clerk of Court **must return** Plaintiff's unfiled "556-page 'Complaint Addendum'" (Docs. 2 [part] and 3) and "Memorandum Establishing Conformance With 42 U.S.C. § 1997(e)" (Doc. 8) to Plaintiff.

(4)   Plaintiff's "Motion For Assistance In Locating Select Defendants For Service Of Pleadings" (Doc. 25) is **denied without prejudice**.

(5)   Defendants GEO Group, Inc.; Compass Group – North America Division, d.b.a. Canteen Correctional Services; Keefe Group, d.b.a. Keefe Commissary Network; Janice K. Brewer; Ferris D. Ahee; Daniel Cardoza; "Unknown ADC Security Officer(s)" at the Mail Room of the Arizona State Prison Complex-Lewis and/or the Morey Unit of ASPC-Lewis; Eric Hall; Thomas C. Horne; and Timothy Brockman are **dismissed** from this action.

(6)   The following claims in the First Amended Complaint (Doc. 21) are **dismissed** for failure to state a claim upon which relief may be granted:

(a)   Plaintiff's equal protection and Takings Clause claims against Defendant Charles L. Ryan in Counts VII, IX, and X;

(b)   Plaintiff's legal mail policy claims, including his claim regarding the

1   requirement to use first-class postal delivery for legal mail, against

2   Defendant Ryan in Count XI; and

3       (c)     Counts I, II, IV, V, VI, XII, XIII, and XIV.

4       (7)     The following Defendants **must answer** the following claims in the First

5   Amended Complaint (Doc. 21):

6       (a)     Defendant Charles L. Ryan—Plaintiff's due process claims in Counts

7               VII, IX, and X; Counts III and VIII; and Plaintiff's free speech claim

8               regarding his incoming mail policy in Count XI; and

9       (b)     Defendant Allen Ortega—Plaintiff's retaliation claim in Count XV.

10      (8)     The Clerk of Court **must send** Plaintiff a service packet including the First

11  Amended Complaint (Doc. 21), this Order, and both summons and request for waiver forms

12  for Defendants Charles L. Ryan and Allen Ortega.

13      (9)     Plaintiff **must complete**[2] **and return** the service packet to the Clerk of Court

14  within **21 days** of the date of filing of this Order.  The United States Marshal will not provide

15  service of process if Plaintiff fails to comply with this Order.

16      (10)    **If** Plaintiff does not either obtain a waiver of service of the summons or

17  complete service of the Summons and First Amended Complaint on a Defendant within 120

18  days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is

19  later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m);

20  LRCiv 16.2(b)(2)(B)(i).

21      (11)    The United States Marshal **must retain** the Summons, a copy of the First

22  Amended Complaint, and a copy of this Order for future use.

23      (12)    The United States Marshal **must notify** Defendants Charles L. Ryan and Allen

24  Ortega of the commencement of this action and request waiver of service of the summons

25  pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must

26

27          [2]If a Defendant is an officer or employee of the Arizona Department of Corrections,
Plaintiff must list the address of the specific institution where the officer or employee works.

28  Service cannot be effected on an officer or employee at the Central Office of the Arizona
Department of Corrections unless the officer or employee works there.

include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

        (a)    personally serve copies of the Summons, First Amended Complaint, and this Order upon  the Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

        (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(13)   **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(14)   Defendants Charles L. Ryan and Allen Ortega **must answer** the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(15)   Any answer or response **must state** the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

\\

\\

1        (16)    This matter is **referred** to Magistrate Judge Mark E. Aspey pursuant to Rules

2   72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized

3   under 28 U.S.C. § 636(b)(1).

4        DATED this 10th day of May, 2011.

5

6                                                     G. Murray Snow

7                                              United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28