**WO**                                                                                                                    SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy P. Olmos, | No. CV 10-2564-PHX-GMS (BSB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Charles Ryan, et al., | |
| Defendants. | |

Plaintiff Timothy P. Olmos filed this civil rights action under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADC). (Doc. 21.) Plaintiff has filed a Motion for an Order to Photograph Prison Conditions, which Defendants oppose. (Docs. 118, 127.) The Court will deny the motion.

**I.     Background**

On screening of Plaintiff's 15-count First Amended Complaint, the Court directed Defendant Charles L. Ryan to answer Plaintiff's due process claims in Counts VII (illegal taking of money from his account), IX (violating state law inmate compensation statutes), and X (required surrender, without compensation, of orange clothing purchased at the inmate store); Eighth Amendment claims in Counts III (conditions of confinement, including insufficient necessities such as food, clothing, and hygiene products and overcrowding); Fourteenth Amendment claim in Count VIII (unconstitutional taking of money through failure to pay interest on money in his prisoner account); and First Amendment claim in Count XI (free-speech claim regarding an incoming-mail policy). (Doc. 27.) It also ordered

Defendant Allen Ortega to answer the retaliation claim in Count XV. The remainder of the Defendants and claims were dismissed. (Id.)

## II. Motion for Photographs

### A. Parties' Contentions

Plaintiff asserts that Count III claims unconstitutional conditions of confinement that are primarily caused by overcrowding and he wants to preserve the current conditions at ASPC-Eyman-Cook to enable the Court to make an informed decision on injunctive relief. (Doc. 118 at 1.) Plaintiff cites to Brown v. Plata, 131 S. Ct 1910 (2011), which upheld the decision of a three-judge court that entered a remedial order requiring the State of California to reduce its prison population. Plaintiff asserts that another inmate who is also litigating an overcrowding issue obtained a court order to have photographs take by ADC staff. (Doc. 118 at 2.)

Plaintiff alleges that he now lives in Cook Unit, Building 7D, which contains 24 single living spaces converted to 48 spaces by installation of double bunks. (Id. at 3.) Building 7C is set up the same as Building 6C, where Plaintiff previously lived with 26 single living spaces converted to 52. Photographs would document living conditions and enable comparison "with Ryan's physical-plant policy." (Id.) He asks that the photographs be taken on a work day during the morning or afternoon recreation periods to limit the number of inmates photographed and to impose a price of $.50 per photograph, rather than the $2.00 per photograph rate set in Department Order 911.05.1.10.2.4 because he anticipates 15-30 pictures. He also asks the Court not to order that the photographs be sent to the Court and placed under seal. (Id. at 4.)

Defendants respond that Plaintiff's First Amended Complaint claimed that the institution where the alleged violations occurred were, "ASPC-Lewis-Morey (Morey), Buckeye, AZ; ASPC-Tucson-Winchester (Winchester), Tucson, AZ; Central Arizona Correctional Facility (CACF), Florence, AZ; ASPC-Florence-South (South), Florence, AZ." (Doc. 127 at 1; ref. Doc. 21 at 1.) They argue that although the Court in Karban v. Ryan, CV-10-0406-TUC-DCB, ordered photographs taken of the conditions at issue, it denied a

- 2 -

1   later motion in which inmate Karban sought photographs of his *current* living environment,
2   stating that "the Cook Unit, which notably is a Florence facility, is not the subject of his
3   Complaint, which involves the Winchester Unit in Tucson." (Doc. 127 at 2; citing Karban,
4   CV-10-0406-TUC-DCB (Doc. 172).) The Court in Karban also noted that the plaintiff had
5   not established why he needed the photographs of current conditions since he filed his
6   Complaint in 2010: "Pictures of the Cook Unit are not relevant to this case; 'Plaintiff cannot
7   raise a new claim in a motion.'" (Doc. 127 at 2; citing Karban, CV-10-0406-TUC-DCB
8   (Doc. 172).) Defendants here argue that the current conditions at ASPC-Eyman have nothing
9   to do with Plaintiff's claims in this action, which allegedly occurred two or more years ago,
10  at different prison facilities, and under the supervision of different prison personnel. (Doc.
11  127 at 2.)

12  Plaintiff replies that although it is true that Plaintiff's Complaint specifies that the
13  constitutional violations were at Eyman-Cook, ADC has admitted that overcrowding is a
14  "statewide problem" which Plaintiff argues "feeds into his use of Brown v. Plata" because
15  it is his position that an overloaded prison prevents Ryan from having available resources.
16  (Doc. 129 at 1.) Therefore, Plaintiff must produce sufficient evidence for the injunctive relief
17  he seeks. The Supreme Court included pictures in the Appendix of Brown. (Id. at 2.) He
18  claims that Ryan's overcrowding strategy of double bunking is found at every level 3
19  dormitory that Plaintiff has lived in. He asserts that Defendants are simply afraid to have
20  evidence before the Court. (Id.)

21  Plaintiff also asks the Court, as a compromise, to make two copies available of a video
22  made by ADC Public Information Officer Bill Lamareaux of Winchester on August 12,
23  2009; unseal the photographs in Karban; or order Ryan to transport Plaintiff to the housing
24  units to take the photographs at the cost of $.50 per photograph. (Id. at 3.)

25  **B.     Analysis**

26  The Court will deny the motion. First, Plaintiff's motion is essentially a motion for
27  additional discovery. But the discovery deadline was August 31, 2012, so Plaintiff's motion,
28  which was not made until October 4, 2012, is untimely. (Doc. 100.) But more important,

the Court finds that Plaintiff fails to establish that the unspecified pictures he seeks are relevant. As the Court recently noted in Karban, without a showing of a constitutional violation as to inmates' basic needs, overcrowding is not a cognizable claim.

> Without more, a claim of overcrowding is not cognizable under § 1983. Toussaint v. Yockey, 722 F.2d 1490, 1492 (9th Cir.1984), citing Rhodes [v. Chapman,] 452 U.S. 337[, 346 (1981)]. Only if overcrowding is combined with other factors, such as violence or inadequate staffing does it rise to an Eighth Amendment violation. Balla v. Idaho State Bd. Of Corr., 869 F.2d 461, 471 (9th Cir. 1989); Hoptowit v. Ray, 682 F.2d 1237, 1246–49 (9th Cir. 1982). Moreover, there is no Eighth Amendment violation if inmates' basic needs are separately met; in other words, conditions that satisfy Eighth Amendment requirements cannot in combination amount to an Eighth Amendment violation. Id. at 1247.

Karban, CV-10-0406-TUC-DCB (Doc. 157 at 24-5.) Brown v. Plata did not change that; there the plaintiffs alleged that they received inadequate health and mental health care due to overcrowding. Brown, 131 S. Ct. at 1924-26. Moreover, the Supreme Court has held that double bunking does not violate the constitution. Bell v. Wolfish, 441 U.S. 520, 541 (1979). And as Defendants note, the Complaint does not challenge the conditions at Plaintiff's current place of housing. In addition, here, Plaintiff alleges in Count III that ADC (1) provides meals with insufficient nutrition, (2) insufficient clothing between laundering, (3) insufficient hygiene products, (4) insufficient cleaning products, (5) insufficient living facilities, (7) insufficient staff, leading to a delay in escort to the medical unit and increased violence, and (8) no system to notify staff of emergencies. (Doc. 21, Count III.) It is unclear why the Court would require pictures of the physical plant to determine these matters. To the extent that overcrowding is even relevant, Plaintiff can establish that through other evidence.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for an Order to Photograph Prison Conditions (Doc. 118).

///

///

///

- 4 -

1    (2) Plaintiff's Motion for an Order to Photograph Prison Conditions (Doc. 118) is
2 **denied**.
3    DATED this 13th day of November, 2012.

*signature: A. Murray Snow*

G. Murray Snow
United States District Judge