**WO**                                                                                      SVK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Timothy P. Olmos,                    )   No. CV 10-2564-PHX-GMS-MEA
                                     )
              Plaintiff,             )   **ORDER**
                                     )
vs.                                  )
                                     )
                                     )
Charles Ryan, et al.,                )
                                     )
              Defendants.            )
                                     )
_____      )

Plaintiff Timothy P. Olmos filed this civil rights action under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADC).  (Doc. 21.) Defendants move to dismiss certain Counts.  (Doc. 132.)

The Court will grant the motion in part and deny it in part.

**I.      Background**

On screening of Plaintiff's 15-count First Amended Complaint, the Court directed Defendant Charles L. Ryan to answer Count III (conditions of confinement, including insufficient necessities such as food, clothing, and hygiene products and overcrowding); Plaintiff's due process claims in Counts VII (illegal taking of money from his account), Count VIII (unconstitutional taking of money through failure to pay interest on money in his prisoner account); Count IX (violating state law inmate compensation statutes), Count X (required surrender, without compensation, of orange clothing purchased at the inmate store); and Plaintiff's free speech claim regarding the incoming-mail policy in Count XI.  (Doc. 27.) It also ordered Defendant Allen Ortega to answer the retaliation claim in Count XV.  The

remainder of the Defendants and claims were dismissed.  (Id.)

Defendants now move to dismiss claims as follows:

- • failure to exhaust administrative remedies: claims in Count VII (authority to charge for renewal of diabetic diet, rate of pay, and missed special diet meals); Count VIII (interest on inmate trust account); Count IX (pay received for kitchen work); Count X (return of orange jump suit on release); Count XI (items forbidden to receive by mail); and Count XV (retaliation);[1]

- • time barred: claims in Count III (overcrowding, inadequate nutrition, and insufficient clothing);

- •  not ripe for adjudication: claims in Count VII (charges for uneaten special diets, replacement ID cards, and costs relating to a positive urinalysis); claim in Count IX (rate of pay as a kitchen worker); Count X (relinquishment of his prison uniform); and

- • Count IX wage claims because Plaintiff does not qualify for the pay he seeks under Ariz. Rev. Stat. § 31-254.

(Doc. 146 at 10.)

Because there are numerous counts in the First Amended Complaint and Defendants assert multiple grounds for dismissal of several of the counts, the Court will address the parties' arguments count by count to determine what claims, if any, remain.

## II.     Legal Standards

### A.     Exhaustion of Administrative Remedies

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions.  See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009).  Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered

---

[1]Defendants initially sought dismissal of additional claims on the ground of failure to exhaust administrative remedies but withdrew certain arguments upon reviewing Plaintiff's response. (See e.g., Doc. 146 at 2, 3.)

1    through the administrative process, <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).  And a

2    prisoner must complete the administrative review process in accordance with the applicable

3    rules.  <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 92 (2006).

4          Exhaustion is an affirmative defense.  <u>Jones v. Bock</u>, 549 U.S. 199, 212 (2007).  Thus,

5    the defendant bears the burden of raising and proving the absence of exhaustion.  <u>Wyatt</u>, 315

6    F.3d at 1119.  Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)

7    motion, a court may look beyond the pleadings to decide disputed issues of fact.  <u>Id.</u> at 1119-

8    20.  Further, a court has broad discretion as to the method to be used in resolving the factual

9    dispute.  <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 369 (9th

10   Cir. 1988) (quotation omitted).

11         **B.    Statute of Limitations**

12         Section 1983 of Title 42, U.S.C., does not include its own statute of limitations.

13   <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 991 (9th Cir. 1999).  Therefore, federal courts apply the

14   statute of limitations governing personal injury claims in the forum state.  <u>Wilson v. Garcia</u>,

15   471 U.S. 261, 280 (1985); <u>TwoRivers</u>, 174 F.3d at 991.  In Arizona, the limitations period

16   for personal injury claims is two years.  <u>Id.</u>; <u>see also</u> Ariz. Rev. Stat. § 12-542 (providing that

17   actions for personal injury must be commenced within two years after the cause of action

18   accrues).  A court applies state law to determine who has the burden of proof as to the statute

19   of limitations.  <u>See</u> <u>Carvalho v. Raybestos-Manhattan, Inc.</u>,794 F.2d 454, 457 (9th Cir. 1986).

20   Under Arizona law, the statute of limitations is an affirmative defense to be pleaded and

21   proved by the defendant.  <u>Kerwin v. Bank of Douglas</u>,  379 P.2d 978, 981 (Ariz. 1963).

22         Although the statute of limitations applicable to § 1983 claims is borrowed from state

23   law, federal law continues to govern when a § 1983 claim accrues.  <u>Wallace v. Kato</u>, 549

24   U.S. 384, 388 (2007); <u>TwoRivers</u>, 174 F.3d at 991.  Under federal law, a claim accrues

25   "when the plaintiff knows or has reason to know of the injury which is the basis of the

26   action." <u>Id.</u>; <u>Kimes v. Stone</u>, 84 F.3d 1121, 1128 (9th Cir. 1996).

27         The Court must also apply any state rule for tolling to actions brought under § 1983.

28   <u>Hardin v. Straub</u>, 490 U.S. 536, 544 (1989);  <u>Johnson v. State of California</u>, 207 F.3d 650,

653 (9th Cir. 2000); <u>TwoRivers</u>, 174 F.3d at 992.  Under Arizona law, the limitation period is tolled during mandatory exhaustion of administrative remedies.  <u>See</u> <u>Brown v. Valoff</u>, 422 F.3d 926, 943 (9th Cir. 2005); <u>Arizona Dep't of Revenue v. Dougherty</u>, 29 P.3d 862 (Ariz. 2001); <u>Third & Catalina Assoc. v. City of Phoenix</u>, 895 P.2d 115, 119 (Ariz. Ct. App. 1994); <u>see also</u> Ariz. Rev. Stat. § 12-821.01(c) (cause of action required by law or contract to be submitted to administrative review process does not accrue until process exhausted)).

### C.    Ripeness

Article III of the Constitution limits this Court's jurisdiction to "cases" and "controversies," which necessarily "precludes the exercise of jurisdiction by a federal court unless the plaintiff has suffered some actual injury or faces a threatened injury, and the injury is fairly traceable to the action challenged and is likely to be redressed by a favorable decision."  <u>Culinary Workers Union v. Del Papa</u>, 200 F.3d 614, 617 (9th Cir. 1999) (citing <u>Valley Forge Christian College v. Americans United</u>, 454 U.S. 464, 472 (1982)).  Further, when a plaintiff seeks declaratory and injunctive relief, the plaintiff must demonstrate a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  <u>Culinary Workers Union</u>, 200 F.3d at 617 (quoting <u>Ross v. Alaska</u>, 189 F.3d 1107, 1114 (9th Cir. 1999) (internal quotation and emphasis omitted)).  A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all."  <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998) (internal quotations and citations omitted).

## III.   Count III

Plaintiff alleges in Count III that ADC provides (1) meals with insufficient nutrition, (2) insufficient clothing between laundering, (3) insufficient hygiene products, (4) insufficient cleaning products, (5) insufficient living facilities, (7) insufficient staff, leading to a delay in escort to the medical unit and increased violence, and (8) no system to notify staff of emergencies.  (Doc. 21 at 6.)

///

///

## A.    Parties Contentions

### 1.    Defendants

Defendants withdraw their Motion to Dismiss with respect to failure to exhaust administrative remedies on Count III, but they note that Plaintiff fails to presents evidence that Ryan was ever made aware of the overcrowding complaint—an argument that Defendants assert they will present on summary judgment. (Doc. 146 at 2.)  Defendants also argue that the claims in Count III are time barred.  (Doc. 132 at 15; Doc. 146 at 7.)  Plaintiff was transferred to the Winchester Unit on July 23, 2008, but he did not bring this action until November 19, 2010.  Defendants assert that any claims arising out of Plaintiff's grievance about inadequate nutrition and overcrowding are time barred because they accrued before November 28, 2008. (Doc. 132 at 15.)  Defendants assert that although Plaintiff claims that he submitted an informal resolution about insufficient clothing and laundry service on June 4, 2009, the complaint related to prison operations rather than the ADC policy itself.  In addition, because Plaintiff did not claim that Ryan was personally involved in providing clothing and laundry service, the allegation does not state a claim against Ryan.  (Id. at 15.)

### 2.    Plaintiff

Plaintiff contends that Defendants did not raise timeliness in response to the grievances.  He claims that each day that he was provided a nutritionally inadequate diet constituted a discrete act. (Doc. 144 at 10-11.)  Plaintiff was living at Winchester where the lack of grievance forms and unresponsiveness to grievances made administrative remedies unavailable.  While Plaintiff was at South Unit, on August 2, 2010, Ryan revised the menu and the means to challenge this menu was cut off because administrative remedies were unavailable.  (Id. at 10.)

Plaintiff addresses the argument that he has not stated a claim against the Director.  (Id. at 11.)  He argues that the policies which prohibit him from wearing dirty clothes but do not allow him to wash clothing in his cell make Plaintiff completely reliant on Ryan's centralized laundry service and that Ryan is responsible for ADC policies pursuant to Ariz. Rev. Stat. § 41-1604(A)(1).  Plaintiff's Informal Resolution complained about the inability

1   to wear clean clothes every day.  Plaintiff argues that he has stated a claim.  (Id.)

2   **3.   Reply**

3   Defendants reassert their argument regarding the statute of limitations and assert that

4   the Ninth Circuit has rejected the continuing-violation theory.  (Doc. 146 at 7.)  As to the

5   claims regarding inadequate nutrition, they assert that Plaintiff's excuses for not filing a

6   grievance after August 2, 2010 are conclusory.   They further argue that there is no

7   *respondeat superior* liability under § 1983 and there is no personal involvement by Ryan.

8   (Id.)

9   **B.   Analysis**

10  Defendants have withdrawn their defense regarding exhaustion of administrative

11  remedies on this claim because Plaintiff provided evidence that he submitted his Director's

12  appeal for these claims.  (Doc. 146 at 1, ref. Doc. 52-1 at 81.)  The referenced document is

13  a Director's Appeal, dated January 2, 2009.  It is unclear from the face of this document what

14  issues are covered by it.  Defendants note that Plaintiff acknowledges that he was transferred

15  to Winchester in July 2008.  (Doc. 146 at 7.)  The statute of limitations is tolled during the

16  period of exhaustion of administrative remedies, which could not have been completed until

17  some time after January 2, 2009.[2]  Therefore, the Complaint was filed within two years, and

18  the claims are not time barred.

19  As for Defendants' argument that Plaintiff fails to state a claim, the Court rejects it.

20  The First Amended Complaint has already been screened pursuant to 28 U.S.C. § 1915,

21  which uses the same standard as Federal Rule of Civil procedure 12(b)(6).  Resnick v. Hayes,

22  213 F.3d 443, 447 (9th Cir. 2000).  Defendants do not cite sufficient grounds to reconsider.

23

24  _____

25  [2]As to Defendants' arguments that the Ninth Circuit has rejected the continuing-
    violation theory, the Court notes that Ngo did not reject the theory but merely refused to

26  apply it in that case.  Ngo v. Woodford, 539 F.3d 1108, 1109-10 (9th Cir. 2008).  More
    recently, the Ninth Circuit has stated that an apparent conflict among cases regarding statutes

27  of limitations is not a conflict but rather different lines of authority that identify different
    circumstances that lead to different accrual dates for claims.  Pouncil v. Tilton, --- F.3d ---,

28  2012 WL 5871659 (9th Cir. Nov. 21, 2012).

1   Moreover, it is unclear why Defendants would raise this argument under the guise of
2   timeliness, which is an unrelated issue.

3          But as noted in this Court's Order of November 13, 2012, without a showing of a
4   constitutional violation as to inmates' basic needs, overcrowding itself is not a cognizable
5   claim.  (Doc. 141 at 4, citing <u>Toussaint v. Yockey</u>, 722 F.2d 1490, 1492 (9th Cir. 1984).)

6          The motion to dismiss is denied as to claims in Count III.

7   **IV.    Count VII**

8          In Count VII, Plaintiff alleges a due process violation by Ryan who promulgated
9   "ADC policies that charge inmates [accounts] for photocopies, legal phone calls, legal
10  supplies (paper, pens, etc.), legal mail postage, repayment for positive urinalysis tests,
11  uneaten special diets, follow-up visits and prescription renewals for chronic diseases in
12  violation of A.R.S. § 31-201.01(I)(12), replacement ID cards and ID clips, and GED testing."
13  (Doc. 21 at 11.)

14         **A.    Parties' Contentions**

15                **1.    Defendants**

16         Defendants argue that Plaintiff failed to exhaust administrative remedies as to being
17  charged for legal copies, renewing his diabetic diet, deductions from his pay, and missed
18  special diet meals.  (Doc. 132 at 3-4.)  They assert that the only completed grievance
19  regarding a matter actually affecting him was the grievance concerning legal copies.  (<u>Id.</u> at
20  4.)  They contend that Plaintiff does not claim to have grieved charges for legal phone calls,
21  legal supplies, legal mail postage, repayment for positive urinalysis, follow up doctor visits
22  and prescription renewals, replacement ID cards and clips, and GED testing costs.  (Doc.
23  132, Ex. B, Pl.'s Resp. to Interrog. No. 1.)  They also assert that Plaintiff admits that his
24  complaints about being charged for uneaten special diets, replacement ID cards, and costs
25  relating to positive urinalysis pertain to possible future charges.  (<u>Id.</u> at 4; ref. Doc. 116 at 2,
26  8.)

27         In their reply, Defendants withdraw their motion to dismiss for failure to exhaust
28  administrative remedies as to this claim, "except with respect to [Plaintiff's] claim that the

1    director had no statutory authority to make various deductions from ADC inmate accounts."

2    (Doc. 146 at 3.)  They request that the Court indicate that the only issue to be litigated in

3    Count VII is Plaintiff's "general claim that the Director of the ADC has no statutory authority

4    to charge inmates for services provided by the prison, especially since [Plaintiff] failed to

5    present evidence that he ever complained to Director Ryan about specific deductions."  (Id.)

6    They later conclude that as to Count VII, Plaintiff failed to exhaust as to charges "for renewal

7    of a diabetic diet, rate of pay, [and] missed special diet meals."  (Id. at 10.)  It is unclear what

8    part of their motion Defendants have withdrawn, but the last statement is the clearest

9    description of remaining exhaustion-defense claims, so the Court will address only diabetic

10   diet, rate of pay, and missed special diet meals.

11        Defendants assert that in his Director's appeal in Grievance No. A02-056-010,

12   Plaintiff complained only that Director Ryan had no statutory authority to make various

13   deductions from ADC inmate accounts. (Doc. 146 at 3; Doc. 132, Ex. A, Attach. 3.)  Plaintiff

14   did not object to specific deductions.  (Doc. 146 at 3.)  They claim that Plaintiff did not rebut

15   Defendants' evidence that, when he attempted to grieve additional specific issues relevant

16   to Count VII, he did not do so properly and his grievances were unprocessed.  (Id., ref. Doc.

17   8-3 at 41-52.)  His Informal Resolution complaining about being charged to renew his

18   diabetic diet was not processed as it was neither signed nor dated. (Doc. 146 at 2; ref. Doc.

19   8-3 at 46.)  Defendants assert that the forms require signing and dating. Plaintiff did not

20   contest Defendants' evidence that his February 10, 2010, grievance was not processed

21   because he  was trying to challenge a rate of pay he had been receiving since 2007 and that

22   the grievance was therefore not timely.  (Doc.146 at 2; ref. Doc. 8-3 at 47.)  He also did not

23   rebut Defendants' evidence that his January 10, 2008, grievance about being charged for

24   special diet meals was not processed because he did not show that he had tried to resolve his

25   issue informally. (Doc.146 at 2; ref. Doc. 8-3 at 48-49.)  They assert that because his

26   grievances were not processed, Plaintiff never made Ryan aware of any of these particular

27   issues.

28        Defendants also contend that certain of the claims in Count VII are not ripe for

1    adjudication; namely, uneaten special diets, replacement ID cards, and cost relating to
2    positive urinalysis. (Doc. 132 at 17.) These relate to possible future charges. Defendants
3    also argue that Plaintiff was not a kitchen worker when he tried to grieve the deductions from
4    his pay. (Id.)

5        Defendants further assert that the claims in Count VII are time barred insofar as they
6    accrued earlier than November 28, 2008, which is two years before the filing date of the
7    Complaint. (Doc. 132 at 15-16.) They note that grievance A02-056-010 was processed
8    within two years of bringing this action but that Plaintiff had previously submitted an
9    informal resolution complaining about being charged for legal copies on January 8, 2008.
10   They contend that the Ninth Circuit has rejected the continuing-violation theory. (Id. at 16.)
11   In their reply, they withdraw their timeliness argument as to charges for renewal of the
12   medical diet. (Doc. 146 at 8.) However, they again state that the claim for charges for legal
13   copies is time barred because the Ninth Circuit has rejected the continuing-violation theory.
14   (Id.)

15                **2.    Plaintiff**

16       Plaintiff alleges generally that he had difficulty exhausting remedies at Winchester
17   due to widespread unavailability of forms and failure to properly respond to grievances,
18   including fraudulent refusal to process grievances; he refers to this as Winchester Grievance
19   Fraud. (Doc. 144 at 4.) Grievance Coordinator Martinez made himself unavailable by not
20   responding to inmate letters requesting forms or permitting unfettered access to his office to
21   obtain forms. Complaints were made to ADC staff. In the early part of June 2009, Baker
22   was appointed interim grievance coordinator. Baker called Plaintiff to her office to discuss
23   his informal complaints and referred to most of his claims as "bullshit" and threatened to
24   place him on the grievance abuse list. Plaintiff rewrote all of his grievances and submitted
25   them on June 8, 2009. CO IV Hall told Plaintiff the complaints had merit and Plaintiff met
26   with Deputy Warden Mendoza about a medical grievance not at issue here. In July 2009,
27   Hoyt was named Grievance Coordinator and on July 29, he returned the grievances as having
28   been rejected by Baker. (Id.)

As to Count VII, Plaintiff asserts that when he complained to Ryan about charging assessments without authorization, his challenge covered "all illegal monetary assessment policies" and was not limited to those listed.  (Id. at 6.)  The Deputy Warden determined that legal copies fell within the scope of the grievance by stating that the deductions were proper.  The Director affirmed the decision but broadened the scope further by stating that "all deductions taken from your Inmate Bank Account have been within statute and Department policy."  (Id., ref Doc. 132, Ex. A, Attach. 3 at 1.)  Plaintiff argues that his demand was to abolish all monetary assessments not rooted in statute.  He asserts that he and the Director referred to deductions from inmate accounts that included debits based on transactions at the inmate store, which is important because of his claims as to legal supplies and postage; therefore the response that referred to all deductions included inmate store transactions.  (Id.)

As to the return of the informal grievance regarding a charge to renew Plaintiff's medical diet, which was returned because it was not signed or dated, Plaintiff argues that Department Order 802 has no explicit provision for returning documents that are inadvertently unsigned.  (Id. at 7; ref. Doc. 8-3 at 47.)  The refusal to process the informal resolution was improper.

Plaintiff also asserts that the issues of uneaten special diets, replacement ID cards, and costs relating to positive urinalysis are ripe, citing United States v. Williams, 356 F.3d 1045, 1049-51 (9th Cir. 2004) and other cases.  (Doc. 144 at 14-15.)

As to timeliness, Plaintiff addresses charges for legal copies and argues that his claim did not accrue in January 2008 because he was also charged for legal copies in August 2010.  (Doc. 144 at 13.)

### B.     Analysis

The Court will grant the motion in part and deny it in part as to the claims in Count VII.

The Court has reviewed the grievance documents for grievance A02-056-010, which relate to this issue.  (Doc. 132, Ex. A, Attach. 3 at 1-11.)  The inmate letter states that Ryan has exceeded his authority with policies that levy assessments without authorization.

"Assessments include, but are not limited to costs associated with: replacement IDs and ID clips, legal supplies, legal mail postage, legal phone calls, and urinalysis testing. My resolution is that the Director remove all illegal monetary assessment policies, and refund all monies assessed via those policies." (Id. at 3.) The documents to not refer to assessments for renewal of a diabetic diet, rate of pay, [and] missed special diet meals.[3] The Court rejects Plaintiff's argument that assessments for renewal of a diabetic diet, rate of pay, [and] missed special diet meals are included although not specifically referred to. Without the specific reference, prison officials would not be aware of the nature of the claim. See Griffin, 557 F.3d at 1120 ("a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.") The Court also rejects Plaintiff's argument that the medical-diet informal grievance that was returned for failure to sign it was improperly processed. Whether there are specific grounds in DO 802 to reject it based on failure to sign, it was not, in fact signed as required by the form, so the rejection was not improper, and Plaintiff did not pursue the matter further.

Plaintiff failed to exhaust his administrative remedies as to assessments for renewal of a diabetic diet and missed special diet meals. The Court agrees that deductions from pay are not part of this claim and are more properly considered in Count IX.

As to ripeness, Plaintiff states in his motion for summary judgment, which is not before the Court at this time, that he has been charged for photo copies, legal telephone calls, legal supplies, ID clips, follow-up visits for health services, and prescription renewals for chronic diseases and that Ryan's policies open him to future debits for uneaten special diets, replacement ID cards, and costs associated with a positive urinalysis. (Doc. 116 at 2, 8.) He states that he is not a drug user and that his claim is designed to cover false positives. He further states in his motion for summary judgment that if his ID card is lost or stolen, he will be charged for a new ID card. (Id. at 8.) The Court finds that the claims for charges for replacement ID cards, uneaten special meals, and positive urinalysis are not ripe for

---

[3]The documents also say nothing about chronic illnesses but Defendants seem to have withdrawn motion as to this claim.

1    adjudication because they depend upon hypothetical future events that may not occur at all.

2    See Texas, 523 U.S. at 300.  Plaintiff's authority is not persuasive; for example in Williams,

3    to which Plaintiff cites, the Court of Appeals held that a challenge to mandatory medication

4    as a condition of supervised release was ripe but distinguished that case from United States

5    v. Linares, 921 F.2d 841 (9th Cir. 1990), where the prisoner was not challenging a condition

6    of his release but rather potential revocation of supervised release.  Williams, 356 F.3d at

7    1051.  The Court noted that the challenge in Linares was to a hypothetical future revocation

8    of supervised release.

9        As to the statute of limitations defense, again, the statute of limitations is tolled during

10   the period of exhaustion of administrative remedies, which appears to have been completed

11   on November 23, 2010.  (Doc. 132, Ex. A, Attach. 3 at 11.)  Therefore,  the Complaint was

12   filed within two years.  Other than a claim for charges regarding legal copies, it is unclear

13   what, if any, charges were assessed that might be outside the statute of limitations, so the

14   Court need not determine at this time whether such claims are time barred.  Moreover, as

15   Pouncil v. Tilton, --- F.3d --- , 2012 WL 5871659, at *10-12 (9th Cir. Nov. 21, 2012),

16   demonstrates, the analysis is more complicated that merely labeling an event a discrete act.

17   Pouncil contrasts a line of cases represented by Delaware State College v. Ricks, 449 U.S.

18   250 (1980) and Knox v. Davis, 260 F. 3d 1009, 1014 (9th Cir. 2011), with a line of cases

19   represented by National RR Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

20   Defendants have the burden of proof on the statute of limitations defense, and on the briefing

21   and limited record here, the Court cannot say that claims for charges for legal copies are time

22   barred.

23       **C.    Conclusion**

24       The Court will dismiss claims for charges related to assessments for renewal of a

25   diabetic diet and missed special meals because Plaintiff failed to exhaust administrative

26   remedies on these claims.  The Court will dismiss claims for replacement ID and positive

27   urinalysis because the claims are not ripe.  The motion is denied as to the other claims.

28   ///

## V.     Count VIII

In Count VIII, Plaintiff raised a claim that his Fifth and Fourteenth Amendment rights were violated by Ryan when he failed to pay either actual or constructive interest on moneys held in Plaintiff's prisoner spendable account and dedicated discharge account. Plaintiff alleges that this amounts to an unconstitutional taking of his property.  (Doc. 21 at 12.)

### A.     Parties Contentions

#### 1.     Defendants

Defendants assert that Plaintiff failed to exhaust administrative remedies as to this claim.  They contend that, according to Plaintiff, he has had a prisoner account since 2005 and that he has never received an interest payment for funds held in it. (Doc. 132 at 5; ref. Doc. 116 at 10.)  After he submitted an Informal Resolution, Plaintiff claims that he initiated a grievance on September 9, 2009, and that, after he received no response, he appealed to the Warden on October 11, 2009. (Doc. 132 at 5, Ex. B at 2.)  Plaintiff further claims that he received no response from the Warden and, because the 100-day period to complete a grievance process had expired, the grievance process had become unavailable to him and the therefore had exhausted his administrative remedies.  But Defendants argue that because Plaintiff initiated his grievance after July 13, 2009 (when the new version of DO 802 became effective), the 100-day time limit was no longer applicable.  (Doc. 132, Ex. A, Attach. 2.)  Rather, when Plaintiff received no response to his appeal from the Warden after 20 work days, he was free to submit his appeal to the Director.   (Id. at DO 802.01§ 1.11, 802.04 § 1.3.)  His failure to do so means he did not complete the ADC grievance process and therefore failed to properly exhaust available administrative remedies.

Defendants also argue that Plaintiff's claims are time barred because they accrued in 2005 when he opened his account and he did not sue until November 2010. (Doc. 132 at 16.)

#### 2.     Plaintiff

Plaintiff asserts that he filed his informal resolution on June 24, 2009, so the version of DO 802 effective in March 2000 applied.  That version of the grievance process capped the length of the grievance at 100 days and the lack of attentiveness by ADC staff led to an

1   out of time response by ADC at every level so that the time for the process expired and

2   Plaintiff satisfied the exhaustion requirement.   (Doc. 144 at 8.)

3           **3.    Reply**

4           Defendants dispute that the prior version of DO 802 applied, arguing that testimony

5   shows that "for grievances initiated before July 13, 2009, DO 802 with the effective date of

6   March 3, 2000 applied.  Grievances initiated after July 13, 2009, are governed by the policy

7   as revised on that date and subsequent May 28, 2010, modification through Director's

8   Instruction 287 ('DI 287'.)"  (Doc. 146 at 3, ref. Doc. 132, Ex. A, Aguilar Decl. ¶ 5.)

9   Defendants argue that the date of the grievance, not the date of the informal resolution,

10  determines which grievance policy applies.  (Doc. 146 at 3.)  They also note that Plaintiff

11  attempted to exhaust according to the new process that did not require the grievance to be

12  responded to by the Grievance Coordinator.  (Id. at 4.)

13          **B.    Analysis**

14          The Court finds that Plaintiff failed to exhaust his administrative remedies as to the

15  claim in Count VIII.   Defendants have met their burden to demonstrate the availability of

16  an administrative process.  See Wyatt, 315 F.3d at 1119; see also Brown v. Valoff, 422 F.3d

17  926, 936-37 (2005).  Plaintiff fails to provide a legally sufficient excuse for his failure to

18  exhaust the claim in Count VIII.

19          Plaintiff asserts in his Supplemental Responses to Interrogatories that on June 24,

20  2009, he initiated the grievance process on the Director's refusal to pay interest on the trust

21  account by submitting an informal resolution to CO III Douglas and that when Douglas did

22  not respond, Plaintiff acted with "unrequired diligence" by proceeding to the next level by

23  filing an inmate grievance on September 9, 2009. (Doc. 132, Ex. B at 2.)  When he received

24  no response, he "again acted with "unrequired diligence" by moving on to the next level of

25  review by submitting an appeal to the warden on October 11, 2009.  The Warden never

26  responded and the 100-day time frame expired.  (Id.)

27          The Court finds that the grievance was initiated after the July 13, 2009 effective date

28  of the new version of DO 802, which no longer had a 100-day limit.  More important, both

grievance procedures provided that expiration of the time limit at any given point entitled the inmate to proceed to the next level. (Doc. 132, Ex. A, Attach. 1, DO 802.07 § 1.2.4, effective March 2000, Attach. 2,  DO 802.01 § 1.11, effective July 13, 2009.)  In other words, non-response by ADC staff did not excuse failure to proceed to the next step in the process.  And the language regarding the 100-day limit states "[t]he maximum length of time for completion of the grievance process is 100 days, from initiation to final disposition. Expiration of the time limit at any level in the process shall entitle the inmate to proceed to the next review level, unless the inmate agrees in writing to the extension."  (Id., Attach. 2, DO 802 § 1.2.4.)  A fair reading of this provision indicates that the 100-day limit was not intended to cut off an inmate's right to the grievance process but rather to place an outside limit on prison officials.  Finally, Plaintiff's explanation for his failure to exhaust is not consistent with his own prior statements.  In his First Amended Complaint, he claimed that he did not exhaust this claim because "staff did not reply to a written request for a grievance form."  (Doc. 21, Count III at 12, ref. Count V at 8.)

Here, it is undisputed that Plaintiff failed to exhaust his grievance by proceeding to the Director level.  Defendants have met their burden to demonstrate the availability of a grievance process, and Plaintiff fails to establish a legally sufficient reason for not exhausting his administrative remedies.

The Court will dismiss Count VIII without prejudice.

**VI.     Count IX**

Plaintiff alleges a due process violation; specifically, that Ryan "violated the inmate compensation requirements of A.R.S. § 31-254(A) and A.R.S. § 41-1624.01(A)-(B)," that he "downgraded the skill level of education aides . . . from skilled to semi-skilled when an automated system (called TOSS) was rolled out without changing any of the duties of the position to reflect the lowered skill level, resulting in a 5¢ per hour decrease in compensation," and that he has "continued the ADC's policy of not paying kitchen and inmate store workers (who perform labor or services for Defendants Canteen and Keefe, who are private contractors) a minimum of $2.00 per hour."  (Doc. 21 at 13.)  Plaintiff further

alleges that Ryan "financially injured" him "by underpaying him 5¢/hour in his current position as an education aide." (Id.)

### A.    Parties' Contentions

Defendants concede that Plaintiff completed the grievance process as to pay he received as an education aide—grievance A02-050-010. (Doc. 146 at 4.) But they assert that he did not exhaust administrative remedies regarding his rate of pay when he worked in the kitchen; they maintain that the grievance he filed was not processed because he was not then employed there, noting that an informal complaint must be submitted within 10 workdays from the date of the action that caused the complaint. (Doc. 132 at 12, Ex. A, Attach. 5 at 8-9.) Plaintiff argues that he did not know of his claim because Ryan "hid the claim . . by publishing a minimum $2.00 per hour pay scale" in the inmate compensation policy, DO 903. (Doc. 144 at 8.) Plaintiff claims that he stumbled on the claim while researching the claim of compensation as an education aide and that under Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998), Plaintiff could not be expected to challenge a problem of which he had no knowledge. (Doc. 144 at 9.) Defendants reply that DO 802 does not refer to a discovery rule, which is consistent with the Ninth Circuit's rejection of the "continuing violations theory." (Doc. 146 at 5.)

Defendants further argue that the claim regarding kitchen work was not ripe and that had Plaintiff exhausted this claim he might have been entitled to a higher wage if he could establish that he was employed pursuant to a contract with the food service subcontractor, Canteen. (Doc. 132 at 17.) In their reply, Defendants assert that Plaintiff is not entitled to the minimum wage "unless he, not the ADC, was working pursuant to a contract with a private" entity. (Doc. 146 at 9-10, citing Hale v. Ariz., 993 F.2d 1387, 1400 (9th Cir. 1993).) Because Plaintiff was not a party to the contract with the food service subcontractor entitling him to the minimum wage, he is only entitled to compensation the director determines. (Id.)

Defendants also ask that this Count be dismissed because Plaintiff has no right to compensation for his work as an education aide, asserting that ADC is not required to pay inmates for work done for ADC, but that inmates are "entitled to compensation for work

1   performed for private parties." (Doc. 132 at 17, citing <u>Piatt v. MacDougall</u>, 773 F.2d 1032,

2   1036 (9th Cir. 1985), and <u>Hale</u>, 993 F.2d at 1400 .)

3       Plaintiff argues that Defendants' claim that he has no right to compensation for work

4   done for ADC contradicts the plain language of the Ariz. Rev. Stat. § 31-254(A) and that the

5   state cannot deny compensation without due process. (Doc. 144 at 16.) As to the contract

6   requirement, Plaintiff asserts that he is currently employed as a dishwasher and he spoke to

7   the food service manager who stated that the use of inmate labor under the supervision of the

8   company's employees "is stipulated in her company's contract with ADC, and that it is the

9   responsibility of her company's employees to train inmate laborers in the proper execution

10  of their assigned job duties." (<u>Id.</u>, Ex. C § 4.)

11      **B.    Analysis**

12      The Court will deny Defendants' motion as to Count IX.

13      As to the statute of limitations, the Court rejects Defendants' argument that because

14  DO 802 contains no reference to a "discovery rule," no such rule can apply to the timeliness

15  of a grievance. In <u>Ngo</u>, the Ninth Circuit applied statute-of-limitations principles to

16  determine when a claim accrued for purposes of the timeliness of an inmate grievance even

17  though the Court of Appeals did not point to "inevitable consequence" language in the

18  grievance procedure. <u>Ngo</u>, 539 F.3d at 1109-10.

19      Apparently Plaintiff was employed as a kitchen worker in 2007 and in 2009. (Doc.

20  144 at 8.) Under the discovery rule, the limitations period does not begin until the plaintiff

21  "has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who

22  has inflicted the injury.'" <u>Bibeau v. Pac. Nw. Research Found., Inc.</u>, 188 F.3d 1105, 1108

23  (9th Cir. 1999) (citing <u>United States v. Kubrick</u>, 444 U.S. 111, 122 (1979)); <u>see also</u>

24  <u>McDonald v. Macabuhay</u>, No. CV 07-1022-PHX-GMS, 2009 WL 2432833, at *6, 2009 U.S.

25  Dist. LEXIS 73851, at *14 (D. Ariz. Aug. 10, 2009) (citing <u>Bibeau</u>, 188 F.3d at 1108;

26  <u>Nunez v. City of Los Angeles</u>, 147 F.3d 867, 870 (9th Cir. 1998) (applying the discovery rule

27  to a substantive due process claim but finding the claim barred by the statute of limitations.)

28  On this record, the Court cannot determine whether the discovery rule applies or, if it does,

1  whether the grievance was timely.  Although Plaintiff claims that Ryan "hid" the wage issue,

2  he also notes that the $2.00 minimum was in DO 903.

3       As to Defendants' statutory arguments, Ariz. Rev. Stat. § 31-254(A), on which

4  Plaintiff relies for this claim, provides that:

> Each prisoner who is engaged in productive work in any state prison or
> institution under the jurisdiction of the department or a private prison under
> contract with the department as a part of the prison industries program shall
> receive for the prisoner's work the compensation that the director determines.
> The compensation shall be in accordance with a graduated schedule based on
> quantity and quality of work performed and skill required for its performance
> but shall not exceed fifty cents per hour unless the prisoner is employed in an
> Arizona correctional industries program pursuant to title 41, chapter 11, article
> 3.  If the director enters into a contract pursuant to § 41-1624.01 with a private
> person, firm, corporation or association the director shall prescribe prisoner
> compensation of at least two dollars per hour.  Compensation shall not be paid
> to prisoners for attendance at educational training or treatment programs, but
> compensation may be paid for work training programs.

12       It appears to the Court that Ariz. Rev. Stat. § 31-254(A) applies only to work

13  performed as part of the prison industries program, known as Arizona Correctional

14  Industries, Ariz. Rev. Stat. §§ 41-1621 to 41-1630, and that the $2.00 per hour provision

15  applies only to work performed where the Director of ADC enters into a contract pursuant

16  to § 41-1624.01 with a private entity.  Case law indicates that the prison labor program also

17  permits the establishment of an Inmate-Operated Business Enterprise (IOBE), Hale, 993 F.2d

18  at 1390, and possibly other variations, Bilke v. State, 209 P.3d 1056, 1057 (Ct. App. Ariz

19  2009) (where inmates seeking the minimum wage[4] were of three types: those working for the

20  correctional industries program, those working for an IOBE, and those who worked for

21  Cutter Biological on prison grounds.)  In Hale, inmate Berry worked for an IOBE and sought

22  the minimum wage; the Court held that "[i]n order to show entitlement under § 31-254, a

23  prisoner must show that he is working pursuant to 'a contract . . . with a private person, firm,

24  corporation or association,'" citing Ariz. Rev. Stat. § 31-254(A).  993 F.2d at 1390, 1400.

25  In other words, as to Berry, the only issue before the Court of Appeals in Hale was Berry's

26

---

27       [4]At the time of Hale, § 31-254 provided: If the director enters into a contract . . . with
28  a private [entity] the compensation shall be prescribed by the [private entity] but shall not be
below the minimum wage.  Hale, 993 F.2 at 1398.

entitlement to the minimum wage; contrary to Defendants' assertion, the Court of Appeals did not rule that the inmate was entitled to no compensation at all because he was not working for a private entity. In addition, the Correctional Industries statute provides that:

> A. The director shall compensate prisoners for their services pursuant to § 31-254.
> B. The director or his designee may contract with any state agency, political subdivision or state department or any private person, firm, corporation or association to provide services or labor rendered by prisoners.

Ariz. Rev. Stat. § 41-1624.01. Because Correctional Industries can contract with entities other than private entities, it appears to the Court that, although the $2.00-per-hour provision is limited to contracts with private entities, the remainder of § 31-254 is not limited to compensation for work performed for private entities.

It is not clear from the pleadings whether Plaintiff's work as an education aide was pursuant to Correctional Industries, and this is not a motion for summary judgment. The Court will not dismiss the claim regarding pay as an education aide. Moreover, as to the claim regarding kitchen work for $2.00 per hour, the Court disagrees with Defendants' interpretation of the holding in Hale; Hale does not limit the provision to the situation of a contract between private parties and inmates. The plain language of the statute refers to the *Director* entering into a contract with a private entity, not the inmate. See Ariz. Rev. Stat. § 31-254 (A).

The Court will deny the motion to dismiss Count IX.

## VII.   Count X

In Count X, Plaintiff claims that his Fifth and Fourteenth Amendment rights to "due process . . ." were violated by Ryan when he promulgated "an ADC policy that demands that Plaintiff Olmos surrender all orange-colored clothing purchased at the inmate store to ADC staff on his release date without any compensation." (Doc. 21 at 14.) Plaintiff alleges that "[u]pon release," he "will incur a property injury by having his clothing taken by ADC staff due to Defendant Ryan's policy" and he will be injured financially by "being compelled to purchase replacement clothing." Although Plaintiff does not allege that he has actually been injured yet, he seeks both declaratory and prospective injunctive relief. (Id.)

1

### A.    Parties Contentions

2    Defendants assert that Plaintiff submitted a grievance about the issue in Count X but

3    his grievance was unprocessed because he did not show how he was adversely affected since

4    he is not even tentatively scheduled to be released until May 10, 2019.  (Doc. 132 at 6.)

5    Plaintiff did not resubmit his grievance.   (Id.)  Plaintiff claims this was a part of the

6    grievances returned as "false[ly] unprocessed," and, therefore, Plaintiff exhausted because

7    the process was not available to him.  (Doc. 144 at 9.)  Defendants reassert that there is no

8    way that Plaintiff can show that he has been adversely affected by the policy at this time and

9    that DO 802 does not provide a process for inmates to attempt to vindicate hypothetical

10   claims about what may happen in the future.  (Doc. 146 at 5.)

11    Defendants also argue that this claim is not ripe because Plaintiff has not been

12   released or required to relinquish his uniform.  (Doc. 132 at 17; Doc. 146 at 9.)

13

### B.    Analysis

14    The Court holds that this claim is not yet ripe for adjudication.  According to Plaintiff,

15   the policy will apply, if at all, only at the time of Plaintiff's release from custody.  At this

16   time, that release is not scheduled until 2019.  Plaintiff's sentence could be extended based

17   on a new conviction or he could die before his release date; in other words, the claim depends

18   upon a hypothetical future event that may not occur at all.  See Texas, 523 U.S. at 300.  This

19   is not a "substantial controversy . . . of sufficient immediacy and reality."  Aydin Corp. v.

20   Union of India, 940 F.2d 527, 528 (9th Cir. 1991) (internal citations and quotations omitted).

21    The Court will dismiss Count X.

22   ## VIII.  Count XI

23    In Count XI, Plaintiff asserted a First Amendment violation by Ryan who instituted

24   "incoming mail policies" that "abridg[e] his free speech rights in a manner that does not pass

25   the Turner test."  (Doc. 21 at 15.)  Specifically, the policies prohibit inmate receipt of (1) tax

26   forms; (2) unused greeting cards, stationary, envelopes, and bookmarks; (3) calendars; (4)

27   circulars, catalogs, and ads; (5) information printed off the ADC website that does not

28   threaten security; (6) non-commercially recorded CDs created during the course of a legal

proceeding; and (7) prohibiting inmates from joining pre-pay music clubs.

### A.    Parties Contentions

Plaintiff's only relevant grievances regarding this claim were a complaint about the policy against inmates receiving tax forms and blank stationary and a complaint about the policy prohibiting receipt of mail over ten pages long.  (Doc. 132 at 6.)  Defendants assert that Plaintiff did not exhaust regarding the other issues.  They allege that he has not shown how he was adversely affected by ADC's policies or why he believes that these issues accrued in the first half of 2009.  (Doc. 146 at 6.)  Plaintiff argues that he began challenging Ryan's bans on receipt of tax forms and stationary but that the grievances were "swallowed up by the Winchester Grievance Fraud, making administrative remedies unavailable." (Doc. 144 at 9; ref. Doc. 52-3 at V13-V19.)  He argues that the same is true for remedies at South Unit.  (Doc. 144 at 9.)

### B.    Analysis

The Court will grant the motion as to unused greeting cards and bookmarks; calendars; circulars, catalogs, and ads; information printed off the ADC website that does not threaten security; non-commercially recorded CDs created during the course of a legal proceeding; and prohibiting inmates from joining pre-pay music clubs.  The Court will grant the motion as to blank stationary.  Finally, the Court will also dismiss the claim related to tax forms.

As to the first group of items, Defendants provide evidence that a grievance procedure was available, and it appears that Plaintiff did not even attempt to exhaust as to those issues.  Plaintiff submits grievance documents for only the stationary and tax-forms issues.  A generalized assertion that the grievance procedure was unavailable is not sufficient to excuse a failure to exhaust administrative remedies.  See Sapp v. Kimbrell, 623 F.3d 813, 823-24 (9th Cir. 2010) (although there is an exception to the PLRA exhaustion requirement when prison officials render the administrative remedies procedure effectively unavailable by improperly screening grievances, to fit within this exception, the prisoner must show, *inter alia*, that he attempted to exhaust his remedies—especially that he actually filed a grievance or

1   grievances.).

2       As to the tax forms, Plaintiff's documents show that on June 8, 2009, he filed a

3   grievance stating that "ADC policy does not permit an inmate to receive tax forms via mail,

4   which does not permit inmates like myself to follow the law by having all the forms to file

5   a proper tax return." (Doc. 52-3, V 14.) The proposed resolution is "the excision of all ADC

6   policies that doe not pass the <u>Turner</u> test, including the above." (Id.) This was returned

7   unprocessed on the grounds that it was out of time frames, that Plaintiff was asked to provide

8   documentation essential to the grievance, and that "Written Instruction Grievances shall only

9   pertain to complaints that relate to the appropriateness or fairness of Department Written

10  Instructions." (<u>Id.</u>, V 15.) The First Amended Complaint alleges that the harm in Count XI

11  is opening of legal mail, seizure of a CD, and return of mail. (Doc. 21 at 15.) Plaintiff never

12  claims—either in the First Amended Complaint or the grievance documents—that he actually

13  needed a tax form that was unavailable to him or that he was, in fact, unable to file a proper

14  tax return. Without specific harm, Plaintiff cannot state a claim for a hypothetical denial of

15  tax forms. The Court will dismiss this claim. <u>See</u> 28 U.S.C. §1915(e)(2)(B)(ii); 28 U.S.C.

16  § 1915(A)(b)(1); 42 U.S.C. § 1997e.

17      Finally, as to the denial of blank stationary, the grievance dated June 8, 2009, states

18  that on March 6, 2009, mail staff seized blank stationary as contraband, which adversely

19  affected Plaintiff because he did not have the paper; he claims in the grievance that he

20  previously had no access to grievance forms. (Doc. 52-3, V 17.) It was returned

21  unprocessed for the same reasons given as to the tax-forms grievance. The Court finds that

22  the grievance was not improperly returned as unprocessed, and Plaintiff does not explain why

23  he did not attempt to resubmit the grievance with proof of seizure of the stationary.

24  Therefore, Plaintiff failed to exhaust administrative remedies.

25      The claims in Count XI will be dismissed.

26  **IX.   Count XV**

27      In Count XV, Plaintiff alleged retaliation after he wrote to the Kansas Department of

28  Corrections (KDOC) about the access to the courts it provides to inmates," and the KDOC

1  notified ADC administration of the inquiry and included a copy of Plaintiff's letter.  Plaintiff

2  alleged that unknown ADC staff ordered Ortega to "take care" of Plaintiff, even though an

3  unbiased review of the letter in question made it clear that the letter did not violate either

4  state law or ADC policy," and that Ortega initiated disciplinary proceedings by charging

5  Plaintiff with fraud. (Doc. 21 at 19.)

6          **A.      Parties' Contentions**

7          Defendants argue that although Plaintiff claims to have exhausted his retaliation claim

8  against Ortega because Plaintiff appealed his disciplinary citation in case #10-A02-0089,

9  even if Plaintiff used all appeals available to him in the disciplinary process, this would not

10  have exhausted his retaliation claim.  (Doc. 132 at 14, ref. Ex. B at 5.)  DO 802.01 § 1.1

11  provides that inmates may use the grievance process to "address inmate complaints related

12  to any aspect of institutional life or conditions of confinement that directly and personally

13  affects the inmate grievant, including Department Orders, Director's Instructions, Institution

14  and Post Order, Technical Manuals and written instructions, procedures and the actions of

15  staff." (Doc. 132, Ex. A, Attach. 2.)  Plaintiff could have pursued a grievance under DO 802

16  complaining that Ortega improperly wrote him up and disciplined him for corresponding with

17  the KDOC.  His failure to do so means that he did not exhaust his administrative remedies.

18  (Doc. 132 at 14.)

19          Plaintiff argues that Defendants have acknowledged that Plaintiff is seeking redress

20  for retaliatory discipline and that DO 802.01 § 1.3.1 prohibited him from using the grievance

21  process to challenge a disciplinary report.  (Doc. 144 at 10.)  Therefore, Plaintiff exhausted

22  his remedies.

23          Defendant reply that remedies remained available under DO 802 and that had Plaintiff

24  prevailed on such a grievance, Ortega could have been subject to adverse personnel action.

25  (Doc. 146 at 6.)  Because remedies remained available to Plaintiff under DO 802, Plaintiff

26  was required to exhaust under DO 802.  (Id.)

27          **B.      Analysis**

28          The Court will deny the motion to dismiss as to the claim in Count XV.  Defendants

do not dispute that Plaintiff completed the disciplinary grievance procedure and do not meet their burden to demonstrate that Plaintiff was required to exhaust this issue again using another administrative procedure.

DO 802.01 § 1.3 states that the Grievance Procedure "does not serve as a duplicate appeal process or substitute appeal process" for, among other matters, the Inmate Disciplinary Procedures.  (Doc. 132, Ex. A, Attach. 2.)  It does not, however, state that, in order to be properly exhausted, some issues may have to be pursued under more than one administrative remedy procedure.  Although Defendants assert that remedies remained available to Plaintiff under DO 802, they cite to nothing in the procedure.  Moreover, it is unclear from the record what issues were raised in the disciplinary appeal.  If the issue of retaliation was raised, arguably prison officials were afforded an opportunity to address the retaliation issue; this would satisfy the primary purpose of a grievance system: "to notify the prison of a problem." See Griffin, 557 F.3d at 1120.  Defendants fail to meet their burden to show that Plaintiff did not exhaust his administrative remedies, and the motion will be denied as to Count XV.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion to Dismiss (Doc. 132).

(2) Defendants' Motion to Dismiss (Doc. 132) is **granted in part and denied in part** as follows:

  (a) **granted**:

  (i) Count VII—claims for assessments for renewal of diabetic diet and missed special meals are dismissed without prejudice for failure to exhaust administrative remedies, and claims for assessment for replacement ID cards and positive urinalysis are dismissed without prejudice as not ripe;

  (ii) Count VIII is **dismissed** without prejudice for failure to exhaust administrative remedies;

  (iii) Count X is **dismissed** without prejudice as not ripe;

1   (iv) Count XI is **dismissed** without prejudice for failure to exhaust

2   administrative remedies, except for the claim for tax forms, which is **dismissed**

3   for failure to state a claim; and

4   (b) **denied** in all other respects.

5   (3) The remaining claims are:

6   (a) Count III;

7   (b) Count VII for assessment to inmate accounts for photocopies, legal phone

8   calls, legal supplies (paper, pens, etc.), legal mail postage, follow-up visits and

9   prescription renewals for chronic diseases, and GED testing;

10   (c) Count IX; and

11   (d) Count XV.

12   DATED this 31st day of January, 2013.

13

14

15   G. Murray Snow
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28