WO                                                                                          SVK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Timothy Olmos, | No.  CV 10-2564-PHX-GMS (BSB) |
| Plaintiff, | |
| vs. | **ORDER** |
| Charles Ryan, et al., | |
| Defendants. | |

Plaintiff Timothy Olmos filed this civil rights action under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADC).  (Doc. 21.) Plaintiff moves for partial summary judgment, and the remaining Defendants—Director Ryan and Allen Ortega—cross-move for summary judgment on all remaining claims.[1] (Docs. 116, 163.)   Plaintiff also submits a Motion to Strike Arguments within Defendants' Reply.  (Doc. 206.)

The Court will deny Plaintiff's motions and grant Defendants' motion for summary judgment in part and deny it in part.

I.      **Background**

On screening of Plaintiff's First Amended Complaint, the Court directed Defendant Charles L. Ryan to answer several Counts and Defendant Allen Ortega to answer one Count.  (Doc. 27.)   The remainder of the Defendants and claims were

---

[1] The Court provided Plaintiff Notice pursuant *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998) of Plaintiff's obligation and requirements for responding.  (Doc. 166.)

dismissed.  (*Id.*)  Defendants subsequently filed a Motion to Dismiss.  (Doc. 132.)  The Court dismissed additional claims and determined that the remaining claims are:

- Count III (violation of the Eighth Amendment regarding conditions of confinement, including insufficient necessities such as food, clothing, and hygiene products, and overcrowding);
- Count VII (violation of due process for charging inmate accounts for photocopies, legal phone calls, legal supplies and legal mail postage, follow-up visits and prescription renewals for chronic diseases, and GED testing);
- Count IX (violation of due process for violating state-law inmate-compensation statutes); and
- Count XV (violation of the First Amendment by retaliation).

(Doc. 152 at 25.)

Plaintiff's motion for partial summary judgment was filed before the Court issued its Order dismissing additional claims, and his motion addresses several dismissed claims.[2]  (Doc. 116.)  Specifically, Plaintiff moves for summary judgment on Counts VII through XI.  (*Id.*)  Thus, the only relevant arguments in Plaintiff's motion are those related to Counts VII and IX.  Defendants respond and cross-move as to all remaining claims.

Plaintiff submits his motion (Doc. 116) and numerous exhibits.[3]  Defendants submit their response and cross-motion (Doc. 163), their Statement of Facts (Doc. 164 (DSOF)), and the declaration of Ortega, with attachments (*id.*, Ex. A, Ortega Decl.), the declaration of Linda Finchum, ADC Financial Services Bureau, with attachments (*id.,* Ex. B, Finchum Decl.), and the declaration of G. Denning, Correctional Officer IV, with attachments (*id.,* Ex. C, Denning Decl.).  In opposition to Defendants' motion, Plaintiff

---

[2] In addition, Plaintiff's motion, as with many of his other filings (*See* Docs. 12, 47), exceeds the page limit.

[3] Plaintiff also cites to many improperly submitted documents, including Docs. 2-8, which the Court specifically directed not be filed (Doc. 11), a Memorandum in Support of his Amended Complaint (Doc. 47) with hundreds of pages of exhibits, and a Memorandum Establishing Conformance with 42 U.S.C. § 1997(e) (Doc. 52), which also has hundreds of pages of exhibits.

submits his Response/Reply (Doc. 195) and a statement of facts and exhibits (Doc. 200 (PSOF),[4] and a Controverting Statement of Facts (Doc. 187 (PCSOF)).

## II.     Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).    Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.* at 250; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any.  *See* Fed. R. Civ. P. 56(c).  At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  The evidence of

---

[4] Defendants object to the Court's consideration of PSOF, but the Court has already determined to admit it.  (Doc. 199.)

the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted.   *Id.* at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").

## III.    Count III

Count III is against Ryan and asserts allegedly unconstitutional conditions of confinement.   Specifically, Plaintiff alleges that Ryan fails to provide Plaintiff with "sufficient (a) nutrition that meets the U.S. Department of Agriculture's latest Dietary Guidelines for Americans, (b) clothing between launderings, (c) hygiene products. . . , (d) cleaning/sanitation supplies, and (e) living facilities."   (Doc. 21 at 5.)   Plaintiff also alleges that Ryan houses inmates in overcrowded dorms and does not provide sufficient numbers of security staff, which has led to increases in violence among inmates.  (*Id.*)

The Court will grant summary judgment to Ryan on this Count because Plaintiff fails to create a triable issue of fact that Ryan knew of unconstitutional conditions of confinement and ignored them.

### A.    Analysis

As a minimum standard, the Eighth Amendment requires that prison officials ensure that inmates receive adequate food, clothing, shelter, sanitation, and medical care, and take reasonable measures to guarantee inmates' safety.  *Farme v. Brennanr*, 511 U.S. 822, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

To demonstrate that a prison official has deprived an inmate of humane conditions in violation of the Eighth Amendment, two requirements must be met—one objective and

- 4 -

one subjective. *Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th Cir. 2000). First, "the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities." *Id.* (internal citation omitted). The subjective prong requires the inmate to demonstrate that the deprivation was a product of "deliberate indifference" by prison officials. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Deliberate indifference occurs only if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In addition, a deprivation of a constitutional right occurs if the person acting under color of state law "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (alteration in original); *see also King v. Atiyeh*, 814 F.2d 565, 567, 568 (9th Cir. 1987) (to be liable under § 1983, government officials must play an affirmative role in the constitutional deprivation alleged); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978). But there is no *respondeat superior* liability in a § 1983 action so a prison official is not liable merely because he is the supervisor of others.

To the extent that Plaintiff objects to Defendant raising the exhaustion issue again, Plaintiff misunderstands Defendant's arguments. (*See* PSOF ¶ 5; Doc. 195 at 2.) Defendant is not arguing that the claim should be dismissed for failure to exhaust administrative remedies. Rather, Defendant is claiming that Plaintiff cannot show that Ryan was deliberately indifferent to Plaintiff's conditions of confinement because Plaintiff cannot show that Ryan was aware of them. (Doc. 203 at 3.)

Although a written ADC policy regarding a condition of confinement, such as a Department Order, would likely be sufficient to show that Ryan was aware of a particular condition, the Court notes that Plaintiff does not point to any written policies regarding

laundering of clothing or nutrition or the other matters about which he complains.[5]
Because there is no *respondeat superior* liability in a § 1983 action, even if Plaintiff did
experience unconstitutional deprivations, Ryan cannot be liable unless he was aware of
the condition.

As to the conditions complained of in Count III, although Plaintiff complained in
an Informal Resolution about allegedly inadequate nutrition, Plaintiff did not appeal this
to the Director's level.  (DSOF ¶¶ 3-4; Doc. 132-1 at 114-15.)  Therefore, Plaintiff cannot
show that Ryan was aware of the allegedly inadequate nutrition.  And even if the Court
assumes that Ryan received the grievance about wearing dirty clothing, which alleged
that the longest interval between launderings is four days (DSOF ¶ 5), the Court finds
that this does not state a constitutional violation; there is no requirement that inmates
receive freshly laundered clothing with greater frequency. The Court notes that he is
permitted two pair of athletic shorts but also permitted three state-provided boxers and
may purchase four.  (Doc. 144 at 19.)  The Eighth Amendment requires only that inmates
be provided with minimum essentials such as adequate food, shelter, clothing, medical
care and safety.  *Helling*, 509 U.S. at 32.  In addition, Plaintiff admitted in response to the
Motion to Dismiss that he did not attempt to grieve any other Count III subclaim.  (Doc.
132, Pl's. May 2, 2012, Supp. Resp. to Defs'. First Set of Non-Uniform Interrogatories, at
2.)   Therefore, there is nothing to show that Ryan was aware of the allegedly
unconstitutional deprivation of hygiene products, or cleaning/sanitation supplies, or
insufficient security staff.

Finally, even if the Court assumes that Ryan received Plaintiff's grievance about
overcrowding (Doc. 132, at 114-115), overcrowding by itself is not a constitutional

---

[5] Plaintiff submits only a list of permissible clothing and a holiday laundry
scheduled for a period not at issue here.  (Doc. 144 at 19; Doc. 200, Ex. B (Doc 200-3 at
18.) )

violation.  *See Hoptowit*, 682 F.2d at 1249.  Therefore, a grievance alleging overcrowding would not have made Ryan aware of unconstitutional conditions of confinement.

In addition, Ryan is entitled to qualified immunity.  A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified-immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Id.* at 202 (emphasis added).  The burden is on the plaintiff to show a clearly established right.  *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  There is no clearly established right to more clothing than is provided and no clearly established right to more frequent laundry service.  And Ryan acted reasonably when he did not address the additional matters about which Plaintiff complains because there is no evidence that he was aware of unconstitutional conditions.

The Court will grant Ryan summary judgment on Count III.

## IV.   Count VII

In Count VII, Plaintiff alleges due process violations regarding ADC policies to charge inmates for various services; those claims for which the Court has determined he exhausted his administrative remedies relate to legal photocopies, legal phone calls, legal supplies, legal-mail postage, follow up doctor visits, prescription renewals, and GED testing costs.  Plaintiff also claims that he is improperly charged for chronic care visits and medications.

The Court will deny Plaintiff's Motion for Summary Judgment and deny Ryan's Motion for Summary Judgment insofar as Plaintiff may have been charged for allergy

- 7 -

visits and medications.   The Court will grant the remainder of Ryan's Motion for Summary Judgment on Count VII.

### A.   Analysis

#### 1.   Postage, photocopies, telephone calls, and legal supplies

##### (a)   No forfeiture

As to the claim regarding postage, photocopies, telephone calls, and legal supplies, Plaintiff relies first on Ariz. Rev. Stat. § 13-904(D), which provides that:

> The conviction of a person for any offense shall not work forfeiture of any property, except if a forfeiture is expressly imposed by law. All forfeitures to the state, unless expressly imposed by law, are abolished.

(Doc. 116 at 7.)  But charging inmates for services provided is not forfeiture.  The act of forfeiting is defined as "the loss of property or money because of a breach of a legal obligation."[6]  (See e.g., Doc. 164, Ex. B, Attach. 1, DO 905.06 Forfeit of Inmate Earnings Upon Escape.)  Plaintiff is not being charged for stamps or legal telephone calls merely because of his status as an inmate but, rather, because he used the services.

The cases on which Plaintiff relies are inapplicable and do not support his claim of a forfeiture.  (See Doc. 195 at 3-4, 14.)  In Blum v. State, 829 P.2d 1247 (Ariz. App. 1992), inmates challenged an ADC policy regarding disposal of excess property, alleging that it violated a statutory provision requiring return of property upon the prisoner's parole or discharge—Ariz. Re Rev. Stat. §  31-228(A).  829 P. 2d 1247, 1248. The policy provided that the an inmate was to be notified if any personal property in his or her possession or received while in prison was deemed to be unauthorized property and the inmate would have 90 days in which to notify the property officer of the desired disposition of the unauthorized property; if the inmate failed to designate a disposition of the property, the property would be processed as unclaimed and then disposed of.  Id. at

---

[6]  Merriam-Webster,  http://www.merriam-webster.com/dictionary/forfeiture  (last visited June 3, 2013.)

1248.  The Arizona Court of Appeals held that the prison regulation conflicted with the statute requiring return of property; it noted that the regulation, therefore, caused a forfeiture of the property in violation of Ariz. Rev. Stat. § 13-904(D) because there would be situations where inmates had no means of disposing of the property to safeguard it.  *Id.* at 1251-52.  In the present case, charging for stamps and photocopying actually used does not violate a specific statute.

*Ill. Dep't of Corrs. v. Hawkins, 952 N.E. 2d 624 (Ill. 2011)* is also inapposite.  In *Hawkins*, the Illinois Supreme Court considered an Illinois statute that provided that the assets of a committed person could be subject to a claim for reimbursement by the Illinois Department of Corrections.  *Id.* at 632.  The Illinois Court concluded that under the relevant Illinois statutory scheme, a portion of the wages earned in prison programs was exempt from collection.  *Id.* at 634-35.   Likewise, *Nelson v. Heiss*, 271 F. 3d 891, 896 (9th Cir. 2001) does not apply.  There, the Ninth Circuit held that funds in an inmate account that came from payments of Veteran's Disability Benefits could not be used by the prison to reimburse itself for copying costs or dental appliances because 38 U.S.C. § 5301(a) specifically exempted such funds from claims of creditors and provided that the funds were not subject to attachment, levy, or seizure.  271 F.3d at 893-94, 896.  Again, in the present case, charging for stamps and photocopying used does not violate a specific statute.

### (b)    No need for express statutory authority

Plaintiff also relies on the absence of express authority for the ADC Director to charge inmates for these services.  (Doc. 116 at 7.)  But Arizona does not require express authorization from the legislature for agency action.

As to Ryan's authority, the issue is not whether there is express authorization from the legislature to charge inmates for postage, photocopies, and the other items but whether the regulations, or in this case the policies, as adopted "may be reasonably implied from a consideration of the statutory scheme as [a] whole to carry out the

purposes and intent of the legislative mandate." *Longbridge Inv. Co., v. Moore*, 533 P.2d 564, 567 (Ariz. App. 1975), quoting *State of Arizona v. Arizona Mines Supply Co*., 107 Ariz. 199, 484 P.2d 619 (1971).  Legislative authority need not be set out in express terms; "it is the law of this state that an agency may promulgate regulations which may be reasonably implied from 'a consideration of the statutory scheme as a whole.'" *Id; see Ethridge v. Ariz. State Board of Nursing*, 796 P.2d 899, 906-07 (App. Ariz. 1990).   The court in *Longbridge* found that the very nature of the liquor industry and its effect upon the health and welfare of the public subjects it to strict regulation and reasoned that under the mandates of *State v. Arizona Mines Supply*, a delegation of rule-making power to the Superintendent and the Board of the Department of Liquor Licenses should be liberally construed.   533 P.2d at 568.   Likewise, the court in *Ethridge* held that the term "unprofessional conduct" is sufficient to guide the Board in its exercise of delegated discretion where the purpose of the statute authorizing the Board to adopt rules and regulations was to protect the public health, safety and welfare.  796 P.2d at 906-07.

Thus, Plaintiff's reliance on *Smith v. Dep't. of Corrs.*, 920 So. 2d 638 (Fl. 1 Dist. App. 2003), is misplaced.   In *Smith* the Florida state court found that a regulation allowing the Florida Department of Corrections to charge inmates for photocopying was invalid because it exceeded the legislature's grant of rulemaking authority.  *Id.* at 643. But the Florida court relied on the language of a Florida statute—and Florida case law interpreting that statute—that required an express statutory grant of authority to validate any agency rule-making.  *Id.* at 641.  That is not the law in Arizona.

As Defendant asserts, under Ariz. Rev. Stat. § 41-1604(A), the Director possesses broad powers and wide discretion with respect to his responsibility "for the overall operations and policies of the department" and to "[m]aintain and administer all institutions and programs within the department."  (Doc. 163 at 3.)  Ariz. Rev. Stat. §41-1604(B) provides Ryan with authority to "[a]dopt rules to implement the purposes of the department and the duties and powers of the director" and "[t]ake any administrative

action to improve the efficiency of the department." (*Id.*) In addition, Ariz. Rev. Stat. § 31-230(B) states that "[t]he Director shall adopt rules and regulations for the disbursement of monies from prisoner spendable accounts." In *Ward v. Ryan*, 623 F. 3d 807, 811(9th Cir. 2010), the Ninth Circuit held that statutes creating a property interest in prison wages did not give inmates full and unfettered right to their property, the inmate did not have a property right in wages withheld in a dedicated discharge account, and the Director had authority to regulate inmate usage of funds in the prisoner spendable accounts, citing § 31-230(B).

The Court holds that as with *Longbridge* and the liquor industry, the nature of corrections and its effect on employees, inmates, and the public subject it to strict regulation and that delegation of rule-making power should be liberally construed. The Court finds that the policies in question can be reasonably implied from "a consideration of the statutory scheme as a whole" because they relate to the operations of ADC and administration of programs within ADC.

### (c)    No state-created right

In addition, Plaintiff's claim fails because he cannot demonstrate a state-created right to postage, photocopies, telephone calls and legal supplies at state expense. In *Piatt v. MacDougall*, the plaintiff inmate sued the Director of ADC alleging that the former version of Ariz. Rev. Stat. § 31-254 created a property right to wages from his workshop job—wages that he had not received.[7] 773 F.2d 1032, 1036 (9th Cir. 1985). The former version of § 31-254 provided that

> A. Each prisoner who is engaged in productive work in any state prison or institution under the jurisdiction of the department of corrections as a part of the prison industries program shall receive for his work such compensation as the director of the department of corrections shall determine. Such compensation shall be in accordance with a graduated schedule based on quantity and quality of work performed and skill

---

[7] Count IX raises wage issues under the current version of Ariz. Rev. Stat. § 31-254.

> required for its performance, but in no event shall such compensation exceed fifty cents per hour unless, pursuant to § 41–1624.01, the director enters into a contract with a private person, firm, corporation or association in which case such compensation shall be as prescribed by the person, firm, corporation or association, but shall not be below the minimum wage.

Ariz. Rev. Stat. § 41–1624.01(A) stated that the director shall compensate prisoners for their services pursuant to § 31–254.  In *Piatt*, the court held that the language of the statute was unambiguous and, accepting the plaintiff's assertions as true that he engaged in productive work as a prisoner, he was entitled to compensation; further, if his work was done as part of a contract with a private entity, he was is entitled to pay at least equal to the minimum wage. 773 F.2d at 1032.  In addition, because Arizona provided a right to compensation for work performed for private parties, the right could not be denied without due process.  *Id.*

The court then determined that the failure to compensate was not random and because statutes mandated compensation, failure to compensate was unauthorized.  The court concluded that the state was under a constitutional obligation not to deny the inmate his wages without affording him a meaningful opportunity to be heard at the time the wages were due; that is, a post-deprivation remedy was not sufficient.  *Id.* at 1037.

Thus, in *Piatt*, the inmate was able to identify specific state statutory language creating an unambiguous property right.  But here, Plaintiff points to no language creating a right to stamps, photocopies, etc. at state expense.  In *Piatt*, the court reasoned that the inmate's federal due process claim would "succeed or fail in part depending upon whether he had a property right to wages from his workshop work."  *Id.* at 1035.  Because Plaintiff has no property right to stamps, photocopies, etc. at state expense, his due process claim fails.

The Court also finds that Ryan is entitled to qualified immunity on this claim.  There is no clearly established right for an inmate to receive the services and items in question free of charge.  *See Harlow*, 457 U.S. at 818.

- 12 -

## 2.   Charges for "chronic care"

Plaintiff's claim that Ryan improperly charges for chronic care has more merit but it, too, ultimately fails, except for his claim regarding allergies.

Under Ariz. Rev. Stat. § 31-201.01 (I), the director is to exempt certain inmates or medical visits by inmates from payment of medical and health services fees and fees for prescriptions, medication or prosthetic devices, including "inmates who are undergoing follow-up medical treatment for chronic diseases."   DO 1101 provides for health care fees to be deducted from inmate accounts and that "no one shall waive the payment of health care fees, except in the following situations: . . . Inmates who undergo follow-up health treatment specifically for their chronic conditions per provider request."   (Doc. 164, Ex. B, Attach. 3, DO 1101 at 21-22 (164-1 at 105-06.))   The DO also states the following:

> [c]hronic conditions requiring regular examinations and/or treatment: cancer, diabetes, hypertention, seizure disorder, heart disease, respiratory disease, tuberculosis, HIV/AIDs, serious mental illness (and other mental illnesses of inpatients at the Alhambra Special Psychiatric Hospital and the Flamenco mental Health Center,) or any condition requiring regular examinations and or treatment that are directly related to a qualifying disability, as defined by 42 U.S.C. [§] 12102(2) of the Americans with Disabilities Act.   Arizona Department of Corrections health care providers shall determine whether regular examinations and or treatment are directly related to a qualifying disability.   There is no health care fee for these conditions.

(*Id.* at 21-22.)   But the definitions state that chronic conditions include allergies and developmental disabilities, as well as the conditions listed in the material quoted above.   (*Id.*)

The Court is not persuaded by Ryan's argument that the determination as to whether a condition is chronic is made by the provider (DSOF ¶ 10); that language appears to apply only to conditions that may qualify under the ADA.   In fact, the DO

contains a list of specific chronic conditions.  But Plaintiff has the burden to show a state-created property interest, and he cannot establish an unambiguous right to most of the free chronic care he seeks.  The statute on which Plaintiff relies contains no definition of "chronic diseases"; it certainly does not specify the conditions to which Plaintiff asserts a right to free care.  *Compare Piatt*, 733 F.2d at 1036 (the language of the Arizona inmate wage statute is unambiguous).  Although Plaintiff argues that Ryan should be bound by the "the common and approved" use of the term, Plaintiff does not explain what that is.  In fact, the Centers for Disease Control have recently noted the lack of consistency in the definition of chronic diseases and conditions.[8]  The Court finds that Ryan had authority to promulgate DO 1101 and that it does not conflict with the language of Ariz. Rev. Stat. § 31-201.01(I).  Because Plaintiff cannot establish a property right to free medical care for most of the conditions about which he complains, Plaintiff has no property right protected by due process.  *See Piatt*, 773 F.2d at 1035.

However, the policy itself defines allergies as a chronic condition.  (Doc. 164, Ex. B, Attach. 3, DO 1101 at 21 (164-1 at 105.))   Under § 31-201.01(I), treatment, prescriptions, and medications for chronic diseases should be exempted from fees.  Plaintiff asserts that he has been charged for these items, although he does not submit proof of this claim.  His charts at Doc. 47-2, 37G-38G, list only medical visits and medications but do not specify what these were for. Therefore, the Court will deny summary judgment to Plaintiff.  But because it appears that Plaintiff may have been improperly charged for allergy treatments and visits because the policy is contradictory or inconsistent, the Court will deny summary judgment to Ryan.  Charging fees for treatment of a chronic condition violates state law.  In addition, the state had a constitutional obligation not to deny Plaintiff free care without affording him a

---

[8] http://www.cdc.gov/pcd/issues/2013/12_0239.htm (last visited August 20, 2013).

meaningful pre-deprivation opportunity to be heard, which the state apparently did not do. *See Piatt*, 773 F.2d at 1036.

Further, as to as to the conditions other than allergies, the Court finds that Ryan is entitled to qualified immunity because there was no clearly established right to have the conditions about which Plaintiff complains deemed chronic.  As to treatment for allergies, the Court finds that Defendant is not entitled to qualified immunity because the DO 1101 defines allergies as a chronic condition but excludes them from the list of conditions for which no fee will be charged.  In view of the statutory language prohibiting fees for follow-up chronic care and the lack of a pre-deprivation opportunity to be heard, the Court cannot find that Ryan acted reasonably as to any charges for allergy care and medication.

The Court will grant Defendant's motion for summary judgment on Count VII except for the issue regarding charges for chronic care for allergies and will deny Plaintiff's motion.  The remaining issues for determination are whether Plaintiff has allergies, whether he was charged for follow-up visits and treatment, and if so, how much. *See id.* at 1037.  Plaintiff also seeks injunctive relief.  (Doc. 21 at 6.)

**V.    Count IX**

Plaintiff asserts that he was undercompensated for his work performed for ADC's food service contractor and for his work as an education aide.  He also asserts that he was not paid a $.05 per hour raise to which he was entitled.

The Court will deny summary judgment, without prejudice, to both parties regarding the kitchen work.  The Court will grant summary judgment to Ryan and deny summary judgment to Plaintiff regarding the downgrade of the education aide position.  The Court finds that the claim for a $.05 per-hour raise based on performance is beyond the scope of the First Amended Complaint.

///

///

1.      **Kitchen worker**

Regarding Plaintiff's claim for under-compensation as a kitchen worker, Plaintiff relies on two state statutes, including Ariz. Rev. Stat. § 31-254.  (Doc. 116 at 10, 21.)  As noted in the discussion of Count VII, the Ninth Circuit addressed a prior version of § 31-254 in *Piatt.*   773 F.2d at 1034, n. 2.   There, the court found that the statute unambiguously created a right to compensation at the minimum wage for work performed for private parties and that the right could not be denied without due process. *Id.* at 1036.

But Ariz. Rev. Stat. § 31-254 has been revised since *Piatt*.  It now provides that:

> A. Each prisoner who is engaged in productive work in any state prison or institution under the jurisdiction of the department or a private prison under contract with the department as a part of the prison industries program shall receive for the prisoner's work the compensation that the director determines. The compensation shall be in accordance with a graduated schedule based on quantity and quality of work performed and skill required for its performance but shall not exceed fifty cents per hour unless the prisoner is employed in an Arizona correctional industries program pursuant to title 41, chapter 11, article 3. *If the director enters into a contract pursuant to § 41-1624.01 with a private person, firm, corporation or association the director shall prescribe prisoner compensation of at least two dollars per hour.* Compensation shall not be paid to prisoners for attendance at educational training or treatment programs, but compensation may be paid for work training programs.

(Emphasis added.)   Section § 41-1624.01 relates to Arizona Correctional Industries (ACI), which is a program pursuant to Ariz. Rev. Stat. § 41-1622(B).  Ariz. Rev. Stat. § 41-1624.01 provides that:

> A. The director shall compensate prisoners for their services pursuant to § 31-254.
> B. The director or his designee may contract with any state agency, political subdivision or state department or any private person, firm, corporation or association to provide services or labor rendered by prisoners.

C. All monies derived from contract services provided pursuant to subsection B of this section shall be deposited in the fund established pursuant to § 41-1624.[9]

Reading the relevant provisions of § 31-254 and § 41-1624.01 together, it is apparent that the $2.00 per hour minimum compensation is not triggered by just any contract between the Director or his designee and a private person, firm, corporation or association. Rather such a contract must be one pursuant to § 41-1624.01 (ACI), and it must be *to provide services or labor rendered by prisoners.*

Plaintiff alleges that if the Director enters into a contract with an outside contractor that provides for the contractor's use of labor and services by inmates the $2.00 per hour minimum applies. (Doc. 116 at 10, 21.) But that is not what the statute says. Moreover, Plaintiff does not allege or provide evidence that the contract with Canteen is one in which ADC contracts to provide services or labor rendered by prisoners; it is more likely that the contract is one for Canteen to provide food services to ADC. Defendant appears to argue that if Plaintiff was paid at a certain amount under the WIPP program, the contract must not have been one requiring the higher wage (DSOF ¶¶ 23, 32, 34); the Court cannot grant summary based on this circular argument. Neither party provides a copy of the contract. The Court finds that it cannot make a determination on this claim without reviewing the contract or contracts in question and other necessary documentation to determine if *the director entered into a contract pursuant to § 41-1624.01 with a private person, firm, corporation or association* to provide services or labor rendered by prisoners.

### 2. Education aide

Turning to the issue of Plaintiff's compensation as an education aide, as noted, Ariz. Rev. Stat. § 31-254 provides that prisoners are to receive compensation as

---

[9] Section 41-1624 relates to the ACI revolving fund.

determined by the Director based a graduated schedule that accounts for quantity and quality of work performed and skill required for its performance.  To the extent that Plaintiff is arguing that any revisions Ryan makes to the compensation schedule must be applied to all jobs equally or that he cannot reduce the skill level of a particular job (Doc. 195 at 16), the Court disagrees.  Plaintiff does not like how Ryan has implemented the graduated scale, but the statute creates no right to have the job of education aide designated as the same skill level as tutor or to have pay reductions applied equally; the statute does not refer to particular jobs.  *Compare Piatt*, 733 F.2d at 1036 (the language of the Arizona statute is unambiguous).  The Court finds that Ryan has the authority to reduce the skill level of the education aide position to semi-skilled.  *See* Ariz. Rev. Stat. § 41-1604(A) (2) and § 31-254.  Because Plaintiff has no state-created right to have his position as education aide classified as skilled or as the equivalent to a tutor position, he has no property right protected by due process.  *See Piatt*, 773 F. 3d at 1036.

Alternatively, the Court finds that Ryan is entitled to qualified immunity on this claim because there is no clearly established right to have the job of education aide designated to be a particular skill level.  The Court will deny Plaintiff summary judgment on this claim and grant summary judgment to Defendant.

### 3.     $.05 per-hour raise

Plaintiff has made the issue of the raise needlessly confusing.  It appears from a careful reading of his pleadings that Plaintiff is claiming that he is entitled (1) to a $.05 per hour raise because his job as an education aide was improperly downgraded from skilled to semi-skilled (Doc. 21) and that he is entitled (2) to a second $.05 per hour raise as a semi-skilled education aide because he has received "overall exceeds" work evaluations for 6 consecutive months while receiving no unsatisfactory ratings in the past 12 months (Doc. 116 at 13-14; PCSOF ¶ 30).  That is, he claims a second $.05 per hour raise based on work performance.

The WIPP Pay Scale, which Plaintiff includes in one of his improper filings,

shows that semi-skilled Phase III inmates earn a base pay of $.30 and maximum pay of $.45. The skilled Phase III inmate has a base pay of $.35 and a maximum pay of $.50. (Doc. 47-3 at 12.) Plaintiff asserts that he is a Phase III semi-skilled inmate, has a GED, which entitles him to $.35 per hour, received one merit increase of $.05 per hour, and now earns $.40 per hour. A second $.05 per-hour raise based on work performance would bring him the maximum Phase III semi-skilled wage of $.45 per hour.

In his First Amended Complaint, Count IX, Plaintiff complained about downgrading the skill level of education aides from "skilled to semi-skilled when an automated system (called TOSS) was rolled out without changing any of the duties of the position to reflect the lowered skill level, resulting in a [$.0]5 per hour decrease in compensation." (Doc. 21 at 5-G.) The Court has disposed of that claim, finding that Ryan had the authority to reduce the skill level of the education-aide position.

The second issue—the pay increase based on work performance—was not raised in the First Amended Complaint. (*Id.*) There is no mention of denial of a merit raise, so Plaintiff's First Amended Complaint gave no notice of the factual allegations presented for the first time in Plaintiff's motion for summary judgment. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). The Court notes that Plaintiff does not state what period he is referring to so it is not possible to determine if any claim for a second merit pay increase had even accrued at the time of filing the First Amended Complaint or if such a claim was exhausted. The Court will not consider the claim regarding the second merit raise.

**VI.    Count XV**

Count XV asserts a claim of retaliation by Ortega stemming from Plaintiff sending a letter to the Kansas Department of Corrections (KDC) seeking information about the library. The Court will grant summary judgment to Ortega as to the disciplinary charge and the cell search.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.    Analysis

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-58 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate to show that (1) the prison official acted in retaliation for the exercise of a constitutionally-protected right and (2) the action "advanced no legitimate penological interest").  Retaliation claims must be evaluated in light of the concerns of excessive judicial involvement in day-to-day prison management, and courts must therefore "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory.  *Pratt v. Rowland*, 65 F3d 802, 807 (9th Cir. 1995.)

The evidence shows that Department Order 914 at 914.05 § 1.1 requires outgoing inmate mail to include an inmate's ADC inmate number and full return address, including the name of the complex, unit, and bed location. (Doc. 203 at 8; Doc. 164, Ex. A, Attach. 2.)  Plaintiff was found guilty of a misdemeanor violation and reprimanded because, although the information he sought from KDC was public and he was enrolled in college at the time as he represented, the return address he used on his envelope did not accurately reflect his status as an ADC inmate.  (DSOF ¶¶ 49, 50.)

Turning to the disciplinary charge, the Court finds that the undisputed evidence shows that Plaintiff cannot establish a claim of retaliation against Ortega.  Alternatively, Ortega is entitled to qualified immunity.

First, Plaintiff has no constitutional right to send mail that does not comply with prison rules.  Plaintiff does not dispute the validity of the rule, and courts have upheld prison rules requiring identifying information on mail.  *See Riggins v. Clark*, 403 Fed.

Appx. 292 (9th Cir. 2010); *Morrison v. Hall*, 261 F.3d 896, 907 (9th Cir. 2001). Second, the Court holds that Plaintiff has not established that Ortega's conduct constituted a sufficiently "adverse action" to prevail on a claim of retaliation; the undisputed evidence shows that although Ortega wrote Plaintiff up, the charges were later changed by another officer, and Plaintiff was found guilty on the revised charges. (PSOF ¶¶ 31, 34, 36; DSOF ¶¶ 46-50.) Thus, Ortega's charges were not the basis of the disciplinary action against Plaintiff. *See Stoot v. City of Everett*, 582 F. 3d 910, 926 (9th Cir. 2009) (the harm to the plaintiff can be traced more directly to an intervening actor). While defendants are generally responsible for the reasonably foreseeable consequences of their actions, "liability may not attach if 'an intervening decision of an informed, neutral decision-maker breaks the chain of causation,' meaning that the harm to the plaintiff can be traced more directly to an intervening actor." *Id.* (quoting *Murray v. Earle*, 405 F.3d 278, 292 (5th Cir. 2005).) Thus, Ortega's conduct caused no harm. Moreover, Plaintiff concedes that he was found guilty of the revised charges, and the Court found on screening the First Amended Complaint that Plaintiff failed to state a due process claim regarding the disciplinary charges. (Doc. 27 at 22.) Therefore, whether the finding of guilt was correct is not an issue before the Court.

The Court also finds that there was a legitimate penological justification for the charges. Even if the charges as written by Ortega were revised, the new charges also dealt with the same letter to KDC. (PSOF ¶ 34.) Those charges were sustained. Thus, it is beyond dispute that there was a legitimate penological justification for charges against Plaintiff based on the letter to KDC.

The Court also finds that Ortega is entitled to qualified immunity on this claim because it would not have been clear to a reasonable officer that he was violating a clearly established right. Ortega charged Plaintiff with fraud for posing as a college student regarding the letter, which did not have the proper identifying information. (DSOF ¶ 46.) Although Plaintiff claims he showed Ortega a text book, Ortega asserts

that he did not know that Plaintiff was a college student. "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). The Court finds that it would not have been clear to Ortega that his conduct was unlawful in the situation he confronted.

In addition, although Ortega did not brief the issue regarding the alleged retaliatory cell search, the Court will dismiss the claim. The Court has found that Plaintiff had no constitutional right to send mail that did not comply with prison rules; therefore, he cannot establish a claim for a retaliatory cell search based on sending the letter to KDC.

**IT IS ORDERED:**

(1)    The reference to the Magistrate is **withdrawn** as to the Plaintiff's Motion for Summary Judgment (Doc. 116), Defendants' Motion for Summary Judgment (Doc. 163), and Plaintiff's Motion to Strike Arguments within Defendants' Reply (Doc. 206).

(2)    Plaintiff's Motion for Summary Judgment (Doc. 116) is **denied** and Plaintiff's Motion to Strike Arguments within Defendants' Reply (Doc. 206) is **denied**.

(3)    Defendants' Motion for Summary Judgment (Doc. 163) is **granted in part and denied in part as follows:**

(a)    **granted** as to the claims in Count III; the claims in Count VII, except for the claim regarding charges related to care and medication for allergies; the claim in Count IX regarding payment for work as an education aide; and the claim in Count XV; and

(b)    **denied** as to the remaining claims.

(4)    Within 45 days of the date of entry of this Order, Defendants may file a new motion for summary judgment, with appropriate documentation, on the claim in Count IX regarding compensation for work in the kitchen. Plaintiff may file a response

and cross-motion within 30 days of the date of filing of Defendants' new motion. **Plaintiff's response and cross-motion, if any, must not exceed a total of 17 pages together, and he must not file any documents independent of his response and cross-motion, if any. The Court will strike any filings submitted by Plaintiff that do not comply with these directions.**

**(5)    The remaining claims are the claim in Count VII regarding fees for treatment of allergies, including damages and injunctive relief, and, pending the second motion for summary judgment, the claim in Count IX for compensation as a kitchen worker.**

Dated this 29th day of August, 2013.

G. Murray Snow
United States District Judge