WO                                                                                          SVK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy Olmos,<br><br>              Plaintiff,<br><br>vs.<br><br>Charles Ryan, et al.,<br><br>              Defendants. | No.  CV 10-2564-PHX-GMS (BSB)<br><br>**ORDER** |

Plaintiff Timothy Olmos filed this civil rights action under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADC). (Doc. 21.) Plaintiff moved for partial summary judgment, and the remaining Defendants—Director Ryan and Allen Ortega—cross-moved for summary judgment on all remaining claims. (Docs. 116, 163.) The Court denied Plaintiff's motions and granted Defendants' motion for summary judgment in part, denied it in part, and dismissed Ortega. (Doc. 208.) Specifically, the Court denied summary judgment to both parties on Plaintiff's claim for alleged underpayment as a kitchen worker and alleged improper charges for "chronic care" visits for allergies. (*Id.*)

The parties have now filed second cross motions for summary judgment on both remaining claims.[1] (Docs. 214, 219.) Defendant Ryan submits his motion (Doc. 214),

---

[1] The Court provided Plaintiff Notice pursuant *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998) of Plaintiff's obligation and requirements for responding. (Doc. 216.)

his Statement of Facts (Doc. 215 (DSOF)), and the declaration of Angelo Daniels, Correctional Administrator II of ADC's Offender Operations Division, with attachments (*id.*, Ex. A, Daniels Decl.). Plaintiff submits his Response/Cross-motion (Doc. 219) and a Statement of Facts (Doc. 220 (PSOF)) and exhibits.

The Court will grant Defendant summary judgment on the remaining claims and deny summary judgment to Plaintiff.

## I.   Count VII—Charges for Allergy Treatment and Care

The Court will dismiss this claim without prejudice on the ground that Plaintiff failed to exhaust his administrative remedies.

### A.   Background

In Count VII of his First Amended Complaint, Plaintiff alleges due process violations based on allegedly improper charges for a laundry list of items, including chronic care treatment. (Doc. 21, count VII at 5E.) In his first motion for summary judgment, Plaintiff relied on several statutes, including Ariz. Rev. Stat. § 31-201.01 (I), which provides that the ADC director is to exempt certain inmates or medical visits by inmates from payment of medical and health services fees and fees for prescriptions, medication or prosthetic devices, including "inmates who are undergoing follow-up medical treatment for chronic diseases." Plaintiff claims that under ADC policies, he was improperly charged for chronic care visits and medications for allergies, as well as a number of other medical conditions.[2] The Court previously denied Defendant's Motion

---

[2] Specifically, Department Order 1100 provides for health care fees to be deducted from inmate accounts and that "no one shall waive the payment of health care fees, except in the following situations: . . . Inmates who undergo follow-up health treatment specifically for their chronic conditions per provider request." (Doc. 164, Ex. B, Attach. 3, DO 1101 at 21-22 (164-1 at 105-06.)) The DO also states the following:

> [c]hronic conditions requiring regular examinations and/or treatment: cancer, diabetes, hypertention, seizure disorder, heart disease, respiratory disease, tuberculosis, HIV/AIDs, serious mental illness (and other mental illnesses of inpatients at the Alhambra Special Psychiatric Hospital and the Flamenco mental Health Center,) or any condition requiring regular

- 2 -

for Summary Judgment insofar as Plaintiff may have been charged for allergy visits and medications and granted it as to all other matters raised in Count VII. (Doc. 208 at 15.) The Court also denied Plaintiff's motion as to all matters, including charges regarding allergies because he did not submit proof of such charges. (*Id.*)

**B.  Cross-motions**

In his present motion, Defendant argues that (1) Plaintiff did not exhaust his administrative remedies as to any claim regarding improper charges for his allergy condition, (2) under DO 1100, respiratory diseases refer to conditions such as asthma or emphysema, not seasonal allergies, which are typically intermittent and do not require regular check-ups and do not normally qualify as chronic conditions unless they are in combination with other conditions, and (3) Plaintiff had a meaningful post-deprivation remedy through the prison grievance procedure. (Doc. 14.) Plaintiff responds to these arguments and submits charts allegedly showing money charged for allergy medications or treatment. (Doc. 219, Ex. A, Pl. Decl.)

**C.  Discussion**

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S.

---

examinations and or treatment that are directly related to a qualifying disability, as defined by 42 U.S.C. [§] 12102(2) of the Americans with Disabilities Act. Arizona Department of Corrections health care providers shall determine whether regular examinations and or treatment are directly related to a qualifying disability. There is no health care fee for these conditions.

(*Id.* at 21-22.) But the definitions state that chronic conditions include allergies and developmental disabilities, as well as the conditions listed in the material quoted above. (Doc. 164, Ex. B, Attach. 3, DO 1101 at 21 (164-1 at 105.))

- 3 -

516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. *Id.* at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

Defendant argues that Plaintiff did not exhaust his remedies in grievance A02-056-010 regarding charges for treatment or medication for allergies. (Doc. 214 at 3-4.) The Court previously addressed exhaustion of administrative remedies in Defendants' Motion to Dismiss. (Doc. 152.) The Court specifically found in examining grievance number A02-056-010 that Plaintiff failed to exhaust administrative remedies for certain claims in Count VII—authority to charge for renewal of diabetic diet, rate of pay, and missed special diet meals. (*Id.* at 2.[3]) The Court did not consider whether Plaintiff exhausted administrative remedies regarding charges for allergy medication or treatment.

Plaintiff responds that although he did not exhaust the issue in grievance A02-056-

---

[3] As to grievance A02-056-010, the inmate letter states that Ryan has exceeded his authority with policies that levy assessments without authorization. "Assessments include, but are not limited to costs associated with: replacement IDs and ID clips, legal supplies, legal mail postage, legal phone calls, and urinalysis testing. My resolution is that the Director remove all illegal monetary assessment policies, and refund all monies assessed via those policies." (Doc. 132, Ex. A, Attach. 3 at 1-11, 3.) The Court found that documents do not refer to assessments for renewal of a diabetic diet, rate of pay, [and] missed special diet meals and would not have sufficed to put prison officials on notice of those issues. (Doc. 152 at 10-11.)

- 4 -

1 010, he exhausted this claim in another grievance filed in 2008. (Doc. 219 at 2; ref. Doc. 52-2 at R4-R7.) Defendant replies that this grievance also did not mention a complaint about follow-up care or medication for allergies. (Doc. 224 at 5.)

The Court finds that neither grievance A02-056-010 nor the grievance documents to which Plaintiff now refers are insufficient to exhaust on the issue. A "grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120. The documents for grievance A02-056-010 do not refer to charges for allergy care or medication. As to the grievance documents to which Plaintiff now directs the Court, the Inmate Letter complains about being charged for a diabetic diet; it does not mention allergies, and the response from the prison refers to e-mailing a copy of Plaintiff's restricted-diet order to the Facility Health Administrator; that the diet is for hypoglycemia, not diabetes; and that hypoglycemia is not covered as chronic. (Doc. 52, Inmate Letter, dated 8/13/08, and Inmate Letter Resp., dated 9/18/08 (Doc. 52-2 at 47, 48).) Likewise, the grievance refers only generally to chronic diseases and recurring medications and specifically to his medical diet, and the appeal to the Director has no specifics, referring only to the former documents. (*Id.*, Grievance, dated 9/26/08, Appeal, dated 10/28/08 (Doc. 52-2 at 49, 50).) Given Plaintiff's focus on his medical diet, his lack of specific reference to allergies, and the number of conditions that are considered chronic under DO 1100, the Court finds that the grievance documents would not have put prison officials on notice that Plaintiff was claiming that his allergies were chronic conditions for which he should not be charged for treatment or medication.

Defendant has met his burden to show that Plaintiff failed to exhaust administrative remedies as to his claim for charges for treatment and medication for allergies. The Court will dismiss this claim without prejudice.

- 5 -

**II.     Count IX—Kitchen Worker Compensation**

Plaintiff asserts that in violation of due process, he was undercompensated for his work performed for ADC's food service contractor. The Court will grant Defendant's motion for summary judgment on this claim and deny Plaintiff's motion.

### A.     Background

Plaintiff asserts that he is entitled to payment of at least $2.00 per hour for his work as a kitchen worker, rather than payment at the scale for the Work Incentive Pay Program (WIPP). He relies primarily on Ariz. Rev. Stat. § 31-254. (Doc. 219 at 2-3.) Ariz. Rev. Stat. § 31-254 now provides that:[4]

---

[4] The Ninth Circuit addressed a prior version of § 31-254 in *Piatt v. MacDougal,* 773 F.2d 1032, 1034, n. 2 (9th Cir. 1985). There, the court found that the statute unambiguously created a right to compensation at the minimum wage for work performed for private parties and that the right could not be denied without due process. *Id.* at 1036. The former version of § 31-254 provided that

> A. Each prisoner who is engaged in productive work in any state prison or institution under the jurisdiction of the department of corrections as a part of the prison industries program shall receive for his work such compensation as the director of the department of corrections shall determine. Such compensation shall be in accordance with a graduated schedule based on quantity and quality of work performed and skill required for its performance, but in no event shall such compensation exceed fifty cents per hour unless, pursuant to § 41–1624.01, the director enters into a contract with a private person, firm, corporation or association in which case such compensation shall be as prescribed by the person, firm, corporation or association, but shall not be below the minimum wage.

Ariz. Rev. Stat. § 41–1624.01(A) stated that the director shall compensate prisoners for their services pursuant to § 31–254. In *Piatt*, the court held that the language of the statute was unambiguous and, accepting the plaintiff's assertions as true that he engaged in productive work as a prisoner, he was entitled to compensation; further, if his work was done as part of a contract with a private entity, he was is entitled to pay at least equal to the minimum wage. 773 F.2d at 1032.

- 6 -

> A. Each prisoner who is engaged in productive work in any state prison or institution under the jurisdiction of the department or a private prison under contract with the department as a part of the prison industries program shall receive for the prisoner's work the compensation that the director determines. *The compensation shall be in accordance with a graduated schedule based on quantity and quality of work performed and skill required for its performance but shall not exceed fifty cents per hour unless the prisoner is employed in an Arizona correctional industries program pursuant to title 41, chapter 11, article 3. If the director enters into a contract pursuant to § 41-1624.01 with a private person, firm, corporation or association the director shall prescribe prisoner compensation of at least two dollars per hour.* Compensation shall not be paid to prisoners for attendance at educational training or treatment programs, but compensation may be paid for work training programs.

(Emphasis added.)  Section § 41-1624.01 relates to Arizona Correctional Industries (ACI), which is a program pursuant to Ariz. Rev. Stat. § 41-1622(B).  Ariz. Rev. Stat. § 41-1624.01 provides that:

> A. The director shall compensate prisoners for their services pursuant to § 31-254.
> B. The director or his designee may contract with any state agency, political subdivision or state department or any private person, firm, corporation or association to provide services or labor rendered by prisoners.
> C. All monies derived from contract services provided pursuant to subsection B of this section shall be deposited in the fund established pursuant to § 41-1624.[5]

**B.    Discussion**

To have a due process claim, plaintiff must demonstrate that he has a state created right to compensation for the kitchen work at the rate of $2.00 per hour.  *See Piatt*, 773

---

[5] Section 41-1624 relates to the ACI revolving fund to pay for, among other expenses, compensation of prisoners and ACI professional and outside services.  A.R.S. § 41-1624A2.

- 7 -

1  F.2d at 1036. Reading the relevant provisions of § 31-254 and § 41-1624.01 together, it
2  is apparent that the $2.00 per hour minimum compensation is not triggered by just any
3  contract between the Director or his designee and a private person, firm, corporation or
4  association, even when inmate labor may be involved. Rather, the inmate must be
5  employed in an Arizona correctional industries program; the contract must be one
6  pursuant to § 41-1624.01, that is, ACI; and it must be to provide services or labor
7  rendered by prisoners.

Defendant provides copies of portions of the relevant contract and contract renewals. (Doc. 215, Ex. A, Attach. 1.) The contract is between the Arizona Department of Corrections and Compass Group/Canteen for the provision of food services. (Doc. 215, Ex. A. Attach. 1.) The Notice of Request for Proposal, which was issued by the Department of Corrections, is for Food Service Management. (*Id.* 215-1 at 6.) The "Special Terms and Conditions" provide that "Contractor" means the organization which is to provide food services. (*Id.*, 1.22.2 (Doc. 215-1 at 22).) "Department" means Department of Corrections, the State of Arizona Department of Juvenile Corrections, where applicable. (*Id.* § 1.22.4.) There is no reference to ACI.[6]

Plaintiff points to the language of the contract that provides for the use of inmate labor and supervision and training. (*Id.* § 7, (Doc. 215-1 at 23.) The language provides, in part:

> The Contractor shall train and utilize the inmate workers in production and sanitation capacities both as a cost effect (sic) labor pool and as an on-the-job training activity within the institution. The inmate labor shall be arranged and coordinated with the designated persons in concert with the Contractor. *Inmate labor used by the Contractor shall be paid for by the Department's Work incentive pay (WIPP) budget.*

---

[6] Compare e.g., *Castle v. Eurofresh*, 09-8114-PCT-JWS, Inmate Work Contract between Eurofresh Farms, Inc. and the Director of the Department of Corrections on behalf of Arizona Correctional Industries to provide inmates to work on a farm. (Doc. 1, Ex. 4.)

- 8 -

(*Id.* § 7.1) (emphasis added). Likewise, the "Special Terms and Conditions" state that inmate labor is to be paid for by the Department's WIPP budget. (*Id.* § 1.22.10.) Plaintiff argues that the level of control by the Contractor over the inmate labor "qualifies as the usage of services or labor by prisoners pursuant to Ariz. Rev. State. § 41-1624.01" even though "it illegally stipulates to the underpayment of inmate kitchen workers." (Doc. 219 at 7-8.) He asserts that his labor does not fall into other statutory categories—specifically, Ariz. Rev. Stat. §§ 31-252, 31-253, and 41-1671.[7] (Doc. 219 at 8.)    He

---

[7] Ariz. Rev. Stat. § 31-252 provides in part:

A. The director may enter into a cooperative agreement with any state agency or political subdivision of this state or any department or agency of the federal government to provide hard labor by prisoners on public works.

C. The director may authorize the use of prisoner work crews to participate in community betterment projects for public and private nonprofit entities. The department may compensate prisoner work crews from monies appropriated by the legislature for the work incentive pay program established by the department.

D. For purposes of this section:

1. "Community betterment project" means any public or private works project that uses prisoners and serves to benefit this state in terms of health, safety, welfare or aesthetics.

Ariz. Rev. Stat. § 31-253 provides in part:

A. The director of the state department of corrections and the director of the department of administration shall use prisoner labor to the maximum extent feasible in the construction of all prison facilities.

Ariz. Rev. Stat. § 41-1671 provides in part:

A. The director, in consultation with the director of the department of administration and the chief executive officer of the Arizona commerce authority, may establish programs for the employment of offenders by private employers and enter into agreements with private employers under which the employer constructs, leases or otherwise establishes facilities within the exterior boundaries of any adult correctional facility to manufacture or process goods or conduct any other business, commercial or agricultural enterprise and employ offenders at the correctional facility.

1 argues that Defendant is exercising his authority to use the "catch all" provision of § 41-1624.01(B), which provides no limits on the kinds of situations for which inmate labor can be used and accuses Defendant of "cooking the books." (*Id.*)

The Court is not persuaded by Plaintiff's arguments. Plaintiff is essentially claiming that Ariz. Rev. Stat. §§ 31-252, 31-253, and 41-1671 limit the Director's authority regarding inmate employment in WIPP to only the types of work specified in those statutes. But the statutes do not say that.

Arizona requires its prisoners to work. Ariz. Rev. Stat. § 31-251(A), (B)(1). "The director has the authority to require that each able-bodied prisoner under commitment to the state department of corrections engage in hard labor for not less than forty hours per week." *Id.* Moreover, under Ariz. Rev. Stat. § 41-1604(A), the Director possesses broad powers and wide discretion with respect to his responsibility "for the overall operations and policies of the department" and to "[m]aintain and administer all institutions and programs within the department." Ariz. Rev. Stat. § 41-1604(B)(1), (2) provides the Director with authority to "[a]dopt rules to implement the purposes of the department and the duties and powers of the director" and "[t]ake any administrative action to improve the efficiency of the department." *Id.* The Director can also "authorize work crews to perform acceptable tasks in any part of the state." *Id.* § 41-1604(B)(2)(f). The Court has already held that "the nature of corrections and its effect on employees, inmates, and the public subject it to strict regulation and that delegation of rule-making power should be liberally construed." (Doc. 208 at 11.)

According to Department Order 903, Inmate Work Activities, inmate work programs include:

    1.1. 1  Labor program subject to WIPP scale, pursuant to A.R.S. 31-254.
    1.1.2  Arizona Correctional Industries (ACI).
    1.1.3  Intergovernmental Agreements (IGA).
    1.1.4  Education, treatment, and Work Based Education (WBE) programs.

1  (DO 903.01.)[8]  (*See also* Doc. 215, Ex. A, Daniels Decl. ¶ 5.)  Inmates are assigned by their Correctional Officer IV to labor subject to the WIPP scale; ACI, Inter-governmental Agreements; or Intergovernmental Service Agreements (ISA).  (DO 903.03 § 1.1.4.)  The only reference to kitchen assignments is in 903.04, Minimum Criteria for Assignment—Internal Risk/Custody Level, § 1.2.2.2.  Nothing in the Department Order specifies kitchen work as in being in the ACI program.  (DO 903.05, ACI Assignments and Pay.)  Moreover, WIPP labor is defined as a labor program subject to WIPP scale, pursuant to Ariz. Rev. Stat. § 31-254.  (DO 903.01 § 1.1.1, 903.03 § 1.1.4.1.)

The Court finds that there is no language in the statutes or regulations that requires contracted kitchen work to be part of the ACI Program or precludes kitchen work at the prison from being part of WIPP and paid "the compensation that the director determines," which is "in accordance with a graduated schedule based on quantity and quality of work performed and skill required for its performance but [does not] exceed fifty cents per hour *unless the prisoner is employed in an Arizona correctional industries program* pursuant to title 41, chapter 11, article 3."  (Emphasis added.)  Plaintiff's argument that the Contractor's "level of control" qualifies the kitchen work as part of ACI is without support in the statutes or regulations.  The work policy in question can be reasonably implied from "a consideration of the statutory scheme as a whole" because they relate to the operations of ADC and administration of programs within ADC.  *See Longbridge Inv. Co. v. Moore*, 533 P.2d 564, 567 (Ariz. App. 1975).  Plaintiff has no state-created right to be employed by ACI merely because the ADC contract for food services incidentally includes use of inmate labor.

Pursuant to the relevant contract, Plaintiff was a prisoner engaged in productive work in a state prison or institution under the jurisdiction of the department as a part of

---

[8] http://www.azcorrections.gov/Policies/900/0903.pdf.  Last visited February 7, 2014.

- 11 -

the prison industries program and was specifically to be paid from the WIPP budget. Plaintiff points to no language in the contract regarding Arizona Correctional Industries.

Because Plaintiff has established no state-created right to the $2.00 per hour compensation he seeks, he has no property right protected by due process. The Court will grant summary judgment to Defendant on this claim and deny summary judgment to Plaintiff.

Because no claims remain, the Court will terminate the action.

**IT IS ORDERED:**

(1) The reference to the Magistrate is **withdrawn** as to Defendant's Second Motion for Summary Judgment (Doc. 214) and Plaintiff's Cross-Motion for Summary Judgment (Doc. 219).

(2) Defendant's Second Motion for Summary Judgment (Doc. 214) is **granted,** and Plaintiff's Cross-Motion for Summary Judgment (Doc. 219) is **denied.**

(3) Plaintiff's claim for improper charges for treatment and medication for allergies (Count VII) is **dismissed without prejudice**, and his claim for under-compensation as a kitchen worker (Count IX) is **dismissed with prejudice**.

(4) The action is terminated, and the Clerk of Court must enter judgment accordingly.

Dated this 25th day of February, 2014.

*A. Murray Snow*
G. Murray Snow
United States District Judge